664 So.2d 750 (1995)
Sadie RIDEAUX, Plaintiff-Appellee
v.
FRANKLIN NURSING HOME, Defendant-Appellant.
No. 95-240.
Court of Appeal of Louisiana, Third Circuit.
November 22, 1995.
Writ Denied February 16, 1996.
*753 Edward Follet Bass, Lake Charles, for Sadie Rideaux.
Adolph Bernard Curet III, Franklin, for Franklin Nursing Home.
Before COOKS, WOODARD and AMY, JJ.
WOODARD, Judge.
This appeal arises from an award of temporary total disability worker's compensation benefits, penalties, and attorney's fees.

FACTS
On April 27, 1990, plaintiff, Sadie Rideaux, slipped and fell during the course of her employment for defendant, Franklin Nursing Home (Franklin), allegedly injuring her back and left leg. Rideaux sought and received total temporary disability (TTD) benefits and medical and psychiatric expenses from Franklin through January 6, 1994, after which it continued to pay only her medical expenses. Rideaux filed a disputed claim for TTD benefits on January 25, 1994.
Franklin moved to compel Rideaux to submit to rehabilitation and to an independent medical examination (IME), but on September 28, 1994, the hearing officer denied the request for an IME and referred the rehabilitation issue to the merits. Subsequently, the entire case was submitted on the parties' memoranda and stipulations, the medical evidence, and the parties' correspondence regarding medical treatment and rehabilitation.
In a judgment dated December 28, 1994, the hearing officer granted Rideaux's request for TTD benefits and awarded her penalties of $5,000 and attorney's fees of $5,000. Franklin initially filed notice of its intent to file for supervisory writs regarding the denial of its motion to compel but instead appealed the entire case after the hearing officer rendered a decision on the merits. Franklin asserts that the hearing officer erred in (1) denying Franklin's motion to compel rehabilitation and an IME, (2) granting Rideaux TTD benefits, and (3) granting Rideaux's request for penalties and attorney's fees. Alternatively, Franklin argues that the awards for penalties and attorney's fees were excessive.

LAW

I. INDEPENDENT MEDICAL EXAMINATION
A worker's compensation claimant must submit herself to examination by a physician selected by her employer as soon after her accident as demanded and, from time to time, thereafter as often as may be reasonably necessary during the pendency of her claim. La.R.S. 23:1121(A). However, the employer may not require the employee to be examined by more than one physician in any single field without the employee's consent. Id.
Franklin's former attorney, Russell Cremaldi, explicitly accepted Dr. Louis Blanda as Franklin's choice of orthopedic surgeon. Nevertheless, Franklin argues that it is entitled to a "second opinion" from another orthopedic surgeon regarding Rideaux's medical condition. An employer is not entitled to a second opinion as such, but only to select a physician to examine an allegedly injured employee. Thus, it is clear that Franklin exhausted whatever right it may have possessed to a second opinion when Cremaldi selected Dr. Blanda as Franklin's choice of orthopedic surgeon. Moreover, Franklin never specified any other orthopedic surgeon as its choice until approximately three years after Rideaux began treating with Dr. Blanda. Such tardiness properly results in the determination that Franklin de facto selected Dr. Blanda as its choice of orthopedic surgeon. See Guillotte v. Dynamic Offshore Contractors, 628 So.2d 234 (La.App. 3 Cir.1993).
Consequently, the hearing officer did not err manifestly in finding that Dr. Blanda was Franklin's choice of physician and, consequently, did not err in denying Franklin's motion to compel Rideaux to submit to examination by another orthopedic surgeon.

II. TEMPORARY TOTAL DISABILITY BENEFITS

A. Disability
An employee seeking TTD benefits must prove by clear and convincing evidence, *754 unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Bundren v. Affiliated Nursing Homes, 94-808 (La.App. 3 Cir. 1995); 649 So.2d 1177. An appellate court may reverse the hearing officer's findings regarding disability only if she has committed manifest error. Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La.1992). We afford the hearing officer's findings of fact much deference, even if the hearing officer decided the matter on the basis of memoranda and medical records. Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La. 1987).
Drs. Arceneaux and Dugas, Rideaux's attending physicians on April 27, 1990, the date of her injury, released her with a diagnosis of mild lumbar strain. However, on May 16, 1990, Dr. Elisabeth Koch, the next physician to see Rideaux, stated that she was unable to return to work and that she needed further evaluation by an orthopedic specialist. On August 8, 1990, Dr. Stephen Goldware, Rideaux's initial treating physician, diagnosed her as suffering from involvement of the sciatic nerve in her left leg. On December 5, 1990, he opined that she suffered from back and leg pain that "possibly" could be due to a herniated disc.
On May 7, 1991, Dr. Blanda noted that a bone scan of Rideaux's lower back was "hot and active at the L5-S1 area." He opined on June 4, 1991 that her studies revealed considerable degenerative disease in the lower lumbar area and recommended that she undergo a rehabilitation program. On November 5, 1991, he stated that Rideaux exhibited "a good deal of degenerative changes at L5-S1 and L4-5 along with some mild degenerative spondylolisthesis." He noted on August 5, 1993 that a CAT scan revealed an asymmetric disc protrusion, at the L5-S1 level, which would be consistent with her symptoms. On October 19, 1993, he detected spasm in her back. He also recommended that she attend a rehabilitation program.
Dr. Daniel Hodges, a rehabilitation specialist, noted "some degree of spasm" in Rideaux's back on January 20, 1994. He opined that she suffered from lumbar radiculopathy and mechanical back pain. He suggested that she undergo a functional capacity evaluation in order to determine her overall capability. On June 15, 1994, Dr. Hodges stated that "it is unlikely we will be able to get this lady back into an active work environment," though he added that he hoped that rehabilitation personnel could provide insight into her future employability. On August 17, 1994, he recommended permanent restrictions at the sedentary level and on October 4, 1994, he noted that she is limited to sedentary activity at best.
During an extensive work capacity evaluation on February 2, 1994, Paul Fontana, a rehabilitation expert, noted inconsistencies in Rideaux's subjective complaints, from which he speculated, she "is magnifying her pain symptoms in an unconscious effort to control her environment through her continued disabled status." Nevertheless, he believed that she experienced genuine pain, and his opinion was that she might be able to return to competitive employment after undergoing proper rehabilitation.
Dr. Rennie Culver, a psychiatrist who examined Rideaux for Franklin, believed that Rideaux consciously exaggerated her symptoms. Dr. Culver opined that Rideaux had not suffered any serious medical problem as a result of her fall, because she has a history of prior back pain between 1978 and 1984 and because she is morbidly obese, weighing approximately 300 pounds, which can aggravate problems in the lower back.
A bone scan, performed on April 3, 1991, revealed an abnormal uptake at the L5-S1 level, which was "compatible" with advanced degenerative disc disease. A lumbar myelogram on May 22, 1991 revealed advanced osteoarthritic changes at the L4-5 and L5-S1 levels with internal degenerative disc disease at the L5-S1 level, but with no evidence of disc bulge or herniation. An asymmetry was noted in the S1 nerve root origination, which might be congenital or due to spondylosis. A CAT scan could not be taken due to Rideaux's obesity.
*755 The objective medical evidence renders it apparent that Rideaux suffers from significant abnormalities in her lower back. Fontana and Drs. Blanda and Hodges indicated that she could not engage in significant activity without rehabilitation, which she has not yet undergone. Therefore, despite her alleged exaggeration of her symptoms, we cannot say that the hearing officer erred manifestly in finding that Rideaux proved by clear and convincing evidence that she is unable to engage in substantial employment.

B. Causation
A worker's compensation claimant must also prove by a preponderance of the evidence that her disability was caused by her workplace accident. Baker v. Conagra Broiler Co., 93-1230 (La.App. 3 Cir. 5/4/94); 640 So.2d 494, writ denied, 94-1435 (La. 1994); 642 So.2d 1289. A pre-existing disease or infirmity does not disqualify the claimant from receiving benefits if the workplace accident aggravated, accelerated, or combined with the disease to produce the disability for which compensation is claimed. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985). Thus, the element of causation is satisfied if the employee's work-related accident was a factor in bringing about the employee's disabled status. Robinson v. Travelers Ins. Co., 619 So.2d 1261 (La.App. 3 Cir.1993). Whether a causal relationship exists between the disability and the employment is a question of fact. The hearing officer's determination in this regard cannot be reversed unless it is manifestly erroneous based on examination of the record as a whole. Baker, 640 So.2d 494.
The employee's workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Walton, 475 So.2d 320. Once an employee establishes the presumption of a casual relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident. Id.
The medical evidence in the case sub judice indicates that Rideaux suffered from back problems prior to her workplace injury, including hospital visits with complaints of lower back pain in February 1978, December 1980, January 1982, and September 1984. Additionally, Dr. Blanda, her treating orthopedic surgeon, believes that her problem stems from a degenerative disease, which would have been progressing for a significant period of time. A myelogram taken on May 22, 1991 corroborated this diagnosis, revealing advanced osteoarthritic changes with internal degenerative disc disease but no evidence of disc bulge or herniation, or spondylolysis or spondylolisthesis.
In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even if she is a party, in the absence of circumstances casting suspicion on the reliability of her testimony. Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3 Cir.1993). We note numerous circumstances which cast doubt concerning the accuracy of Rideaux's subjective complaints. Dr. Goldware noted on December 4, 1990 that Rideaux's straight leg raising was positive on the left when reclining and negative when seated, which "might mean that her symptoms are not real as this could be a serious discrepancy in the findings." Additionally, she claimed to Dr. Blanda and her other treating physicians and therapists that she had never experienced difficulty with back pain prior to the accident, whereas it was established that she visited the emergency room on several occasions with complaints of lower back pain. She also told Dr. Lily Hodges, her treating psychiatrist, that she had never been treated for psychiatric difficulties, yet, the medical evidence reflects that she was hospitalized in 1970 for hysterical neurosis, conversion type, three weeks after she was hospitalized for catatonic episodes. Dr. Lyle Lecogne, a clinical psychologist, noted that Rideaux's responses to his questioning were of a type often associated with severe hypochondriachal states, and that "She appears to be a highly dependent woman *756 who is capable of being interpersonally motivated and possibly having little compunction about using whatever means are necessary to achieve her goals."
Finally, Dr. Culver noted elements of conscious exaggeration in Rideaux's complaints. This was corroborated by Fontana's opinion that Rideaux tends to exaggerate her symptoms. Fontana noted during Rideaux's work capacity evaluation that: (1) she exhibited both breakaway and cogwheel resistance during manual muscle testing; (2) she failed the Jamar Five Functional Reliability Test bilaterally; (3) the BTE and Jamar grip tests did not correlate bilaterally; (4) she reported severe left leg and hip pain, but placed equal weight on both lower legs and led with her left leg when descending stairs; (5) she lifted 15 pounds during a lifting test when she was shown the amount of weight that she was lifting, but lifted only 6 pounds when she was unable to see the weight she was lifting; and (6) she exhibited a slow, shuffling gait when she arrived, but walked smoothly and without shuffling her feet at the conclusion of the evaluation; she immediately returned to her former gait when Fontana noted the change to her.
However, every physician or therapist who examined Rideaux believed that she in fact suffers significant pain as a result of her back condition. The presumption of causation may attach to a claimant who exhibited symptoms of her allegedly disabling illness in the distant past provided that she had suffered no such symptoms immediately prior to her workplace accident. Guillory v. Gulf States Utilities, 94-38 (La.App. 3 Cir. 1994); 643 So.2d 488. Rideaux's prior back problems occurred at least six years prior to her fall, and there is no evidence that she was symptomatic during the time leading up to the accident. She was capable of working during the ten months immediately prior to her fall, when she worked for Franklin. Her disability appeared only after her fall. Simply put, Rideaux was capable of performing her job prior to her fall, but she was rendered unfit for her former employment afterwards. Under such circumstances, her disability must be presumed to have resulted from her workplace accident. Guillory, 643 So.2d 488.
Consequently, Franklin bore the burden of proving that Rideaux's disability was not caused by her fall. Walton, 475 So.2d 320. Although no physician opined that Rideaux's back problems resulted from or were aggravated by her fall, Franklin has failed to point to any other potential reason that her asymptomatic back disease and mental problems became symptomatic immediately following her fall. Therefore, based on our review of the record in its entirety, we cannot say that the hearing officer erred manifestly in finding that Franklin failed to prove that Rideaux's disability was not caused by her workplace injury.

III. REHABILITATION
Fontana and all of Rideaux's treating physicians, Drs. Goldware, Blanda, and Hodges, recommended that Rideaux attend rehabilitation. Notwithstanding, in a letter to General Rehabilitation Services, the company Franklin had retained to rehabilitate Rideaux, Rideaux's attorney stated that she would not attend even a preliminary interview. She based her refusal on the facts that her physicians had not released her to work and that there was no evidence that she had reached maximum medical improvement. Notwithstanding, in February, 1994, Rideaux did have an evaluation done by Fontana. After the evaluation, Fontana scheduled a rehabilitation conference. The conference was cancelled due to illness and never rescheduled because Dr. Hodges decided that a rehabilitation conference was inappropriate and other treatment was needed.
Franklin later filed a motion to compel Rideaux to submit to rehabilitation and to an IME. On September 28, 1994, the hearing officer denied the request for the IME and referred the rehabilitation issue to the merits. The case was submitted on memoranda and evidence and, on December 28, 1994, after careful consideration of the evidence, the hearing officer ordered Rideaux to submit to rehabilitation as recommended by her treating physicians. She also ruled that Rideaux had cooperated with Franklin's rehabilitation efforts up to that point.
*757 Franklin argues that the hearing officer should have ruled on the matter prior to the trial on the merits and that rehabilitation is appropriate from the time of the injury, not from maximum medical recovery, as claimant wants.
Under the worker's compensation scheme, an employee who has suffered a compensable injury, which precludes her from earning wages equal to her pre-injury wages, is entitled to rehabilitation services to be provided by her employer. La.R.S. 23:1226(A). "The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs." La.R.S. 23:1226(B)(1). [Emphasis added.]
Rehabilitation services may be initiated by the employer by designating a rehabilitation provider and notifying the office of worker's compensation administration. La.R.S. 23:1226(C)(1)(a). An employer may request the hearing officer to compel an injured employee to submit to rehabilitation if it is necessary to return her to the work force. "Prior to the hearing officer adjudicating an injured employee to be permanently and totally disabled, the hearing officer shall determine whether there is a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education." La.R.S. 23:1226(D). Refusal to accept rehabilitation as deemed necessary by the hearing officer shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to La.R.S. 23:1221(3), for each week of the period of refusal. [emphasis added].
The Rehabilitation statute does not specify when an employee is required to submit to rehabilitation. It only states "as soon as possible" and grants the hearing officer complete discretion as to what that means and whether rehabilitation is even appropriate for a particular employee.
Based on the foregoing law and considerations, we find Franklin's arguments to be without merit and find no manifest error.
IV. PENALTIES AND ATTORNEY'S FEES
An employer who fails to commence payment of benefits within 30 days after they are due is penalized 12% of the outstanding benefits unless the employee's claim has been reasonably controverted. La. R.S. 23:1201(E). An employer who fails to commence payment of benefits within 60 days after they are due subjects the employer to payment of all reasonable attorney's fees for the prosecution and collection of the amount due when the employer's omission is arbitrary, capricious, or without probable cause. La.R.S. 1201.2. "Whether the refusal to pay worker's compensation benefits warrants imposition of penalties and attorney's fees is a factual question that will not be disturbed in the absence of manifest error." Alford v. Environmental Monitoring, 93-985 (La.App. 1 Cir.1994); 646 So.2d 961.
In the case sub judice, in deciding to terminate Rideaux's TTD benefits, Franklin relied on her refusal to submit to an IME and rehabilitation, as well as Dr. Culver's 1992 report. However, Dr. Culver's psychiatric report, nearly two years old at the time, does not provide a sufficient good-faith basis for terminating Rideaux's benefits, given the physical evidence to the contrary. Further, since we have determined that Rideaux properly refused to submit to the IME, Franklin was not justified in terminating her TTD benefits on this basis. Consequently, the hearing officer did not err manifestly in awarding Rideaux penalties and attorney's fees.
As Rideaux concedes, however, section 1201(E) constrains the penalties that may be awarded to 12% of the benefits due and outstanding. We, therefore, amend the hearing officer's judgment to reflect the statutorily provided penalties.
Franklin also argues that the hearing officer awarded an excessive amount of attorney's fees, because they are capped by La.R.S. 23:1411 at 20% of the first $10,000 awarded and 10% of the remainder. However, attorney's fees awarded for failure to pay claims timely are not subject to the limits *758 prescribed in section 1411. La.R.S. 23:1201.2. Consequently, this assignment of error lacks merit.

CONCLUSION
The judgment is affirmed insofar as it awards Rideaux penalties, as amended, to provide that the penalty award is reduced to 12% of the benefits due and outstanding. In all other respects the judgment of the hearing officer is affirmed. Costs of this appeal are to be divided equally between the parties.
AFFIRMED IN PART; AFFIRMED AS AMENDED IN PART; REVERSED IN PART.
AMY, J., dissents.