746 So.2d 146 (1999)
CITY OF EUNICE, PlaintiffAppellee,
v.
Rebecca CREDEUR, Defendant Appellant.
No. 99-302.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1999.
Writ Granted in part January 28, 2000.
*147 Christopher R. Philipp, Lafayette, for City of Eunice.
Timmy J. Fontenot, Eunice, for Rebecca Credeur.
BEFORE: COOKS, SAUNDERS AND DECUIR, Judges.
SAUNDERS, Judge.
The issue on appeal is whether the administrative hearing officer was correct in concluding that Rebecca Credeur was not injured in the course and scope of her employment on November 20, 1990. Mrs. Credeur began receiving compensation benefits in January 1993. On February 26, 1997, the City of Eunice filed a dispute alleging that Mrs. Credeur was not entitled to disability benefits and medical treatment. Mrs. Credeur filed an answer and reconventional demand for benefits.
After a hearing, the administrative hearing officer concluded that Mrs. Credeur did not sustain an accident during employment, that the injuries for which she seeks compensation were pre-existing and that Mrs. Credeur should be denied workers' compensation benefits.
Our reading of the record and the applicable law convinces us that the administrative hearing officer was clearly wrong and we reverse.

FACTS
The City of Eunice (City) hired Rebecca Credeur (Credeur) in November 1984 to work in the sales tax department. During her early years with the City, Credeur was *148 the only worker in her department. Due to the under-staffing, she put in long hours writing and working at a computer terminal to ensure the completion of work that entered the office. She sat for 4-6 hours without taking a break.
Between 1986 and 1990, Credeur began to experience health problems and was diagnosed with fibromyositis and chronic fatigue syndrome. Her treating physician, Dr. Charles Aswell, III, informed her that her problems were work-related. Additionally, Dr. Aswell informed her several times to take time off work. Credeur did not comply with the doctor's orders because she was the only worker in her department and realized her boss depended on her.
To maintain her workload and continue physical therapy for her condition, Credeur attended physical therapy during her lunch hour. By June 1990, Credeur had difficulty holding her head up for more than fifteen to twenty minutes.
During the course of treatment, Dr. Aswell informed Credeur that her injuries were work-related. In the summer of 1990, Credeur sought reimbursement of her work-related medical bills through workers' compensation. Credeur and the insurance representative contacted the proper person concerning the possible workers' compensation claim. Later, Credeur was informed that workers' compensation did not cover injuries caused by writing and sitting at the computer terminal for long periods.
Following her attempts to file a workers' compensation claim, Credeur's condition improved. In October 1990, Mrs. Credeur returned to work full-time. At that time, Dr. Aswell's medical notes stated that she had made an 80% improvement.
On November 20, 1990, Credeur was injured in a work-related accident. While at work, the back of her chair came off and she fell over. She fell backwards hitting her hip, lower back and head. Credeur filed an Employer's Report of Occupational Injury or Disease in which she described the accident. Despite her injury, Credeur continued to work for more than two years after the accident. In 1992 and following, five physicians diagnosed her with thoracic outlet syndrome (TOS). She was forced to undergo four operations to correct the condition. After the surgeries, she worked part-time until December 1996. In February 1997, the City terminated Credeur because her employment was endangering her and delaying recovery.
On February 26, 1997, the City filed suit asserting that Credeur was not entitled to workers' compensation benefits. The City paid medical compensation for seven years and benefits for four years, totaling $236,839.32. Although her treating physician found her disabled due to a work-related injury, the administrative hearing officer found otherwise.

LAW AND ANALYSIS
The Office of Workers' Compensation hearing officer's findings are subject to the same standard of review, manifest error, as are a trial court's finding. According to the standard, the reviewing court must determine whether the administrative hearing officer's conclusions were reasonable. Stobart vs. State, through DOTD, 617 So.2d 880 (La.1993). A strong presumption has been established in the jurisprudence, and an appellate court may not set aside an administrative hearing officer's finding of fact in the absence of manifest or clear error. Rosell v. ESCO, 549 So.2d 840 (La.1989) The State of Louisiana has recognized the Workers' Compensation Act as remedial in nature. To achieve the humane policies it reflects, the law is to be liberally construed in favor of the injured employee. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993). Considering this policy and evidence in the record, the administrative hearing officer's conclusions were unreasonable and the findings were manifestly erroneous.

*149 A. Was there an accident on the job?
Credeur's first assignment of error is whether the administrative hearing officer erred in concluding there was no work-related injury. In order for an employee to make a claim under the Workers' Compensation Act, the employee must show: (1) there was an accident on the job, and (2) the accident was "arising out of the course and scope of employment." La. R.S. 23:1031. The statutory definition of "accident" is an "unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the same time objective symptoms of the injury." La.R.S. 23:1021(1).
The worker in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992); West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). Corroboration may be provided by medical evidence. West, 371 So.2d at 1150; Thomas v. RPM Corp., 449 So.2d 18 (La. App. 1 Cir.), writ denied, 450 So.2d 965 (La.1984).
The City failed to offer any evidence to discredit or cast serious doubt on the Credeur's version of the accident. The City only asserted that the accident was unwitnessed and that Credeur suffered from pre-existing illnesses. However, neither of these factors is sufficient to preclude a workers' compensation claim.
The City relied upon the testimony of Dr. Mark Valentine. Unlike the treating physician, Dr. Valentine has never examined the Credeur and was obtained only for the purposes of trial. Additionally, Dr. Valentine agrees that different symptoms appeared after the accident and that there is a difference between fibromyositis and TOS. Thus, his testimony was not sufficient to discredit or cast serious doubt on the Credeur's testimony.
In West, 371 So.2d 1146, the employee injured her back in an unwitnessed accident. The Louisiana Supreme Court reversed the lower court's rulings that the employee failed to prove an accident by a preponderance of the evidence. The Louisiana Supreme Court stated that "the Defendant's uncontradicted testimony of the accident at work, corroborated by the doctors' testimony concerning medical observations and treatment was sufficient to prove the work-accident by a preponderance of the evidence." West, 371 So.2d at 1150.
West sets forth several factors to use in analyzing an unwitnessed accident. Utilizing the West factors and the evidence presented, Credeur established there was a work-related accident by a preponderance of the evidence.

1. Defendant Provided Medical History to a Health Care Provider
In West, the plaintiff failed to promptly notify her treating physician of the work-related accident but was not denied workers' compensation benefits. In the case before us, Credeur failed to notify her treating physician immediately following the accident, but she did seek medical attention concerning the accident. On November 21, 1990, she visited Dr. LeJeune, a chiropractor, who treated her in 1987. She informed Dr. LeJeune of the accident. Thus, Credeur did report her accident to a health care provider shortly after the accident. There is no requirement under the Workers' Compensation Act that Credeur return to her previous physician upon suffering a new accident.

*150 2. Notification/Accident Report
The employee in West was allowed to recover compensation, although she failed to promptly notify her employer of the injury. In the present case, Credeur immediately notified her employer of the accident and filed an accident report. On November 20, 1990, Credeur filed an Employer's Report of Occupational Injury or Disease, and in the report, she gave a detailed description of the accident.

3. Employee's Pre-existing Illness
In West, the supreme court rejected the lower court's reliance on pre-existing illnesses to preclude the employee from recovering benefits. The court stated that "even if there were a pre-existing latent back disability, nevertheless workers' compensation benefits are payable when a work-accident aggravates or accelerates it, producing disability." West, 371 So.2d at 1149, citing Johnson v. Travelers Insurance Co. 284 So.2d 888(La.1973).
In the case before us, Credeur had been under the care of various doctors for several years before the November 20, 1990, incident. However, the primary physician released Credeur in September 1990, and she worked the entire month of October. It is clear from the record that Credeur had made improvements and her pain had subsided. There is no requirement under workers' compensation law that a defendant be "totally" healed from pre-existing illnesses to claim workers' compensation. A claimant is only required to show that the work-related accident aggravated or accelerated a current condition.

4. Corroborating Medical Testimony
Finally, the worker's testimony of an unwitnessed accident must be corroborated by the circumstances following the alleged incident. Corroboration may be in the form of doctor's testimony concerning medical observations and treatment. West, 371 So.2d at 1147. After the November 1990 accident, a total of five doctors diagnosed Credeur with TOS. Dr. Aswell had tested Credeur for TOS before the accident but it was not until after the accident that she was diagnosed with the illness. Following the accident, she experienced TMJ symptoms, drooping eyelids and swollen and discolored hands. All are symptoms directly related to TOS. Furthermore, Credeur underwent four surgeries in an effort to treat TOS.
The evidence shows there was a work-related accident. Credeur proved this accident by a preponderance of the evidence. The City failed to discredit the employee's version and the accident is corroborated by medical testimony and treatment. Considering the factors in West, Credeur's evidence showed that more probable than not, the employment accident caused the disability.

B. Was there a new injury or pre-existing injuries?
The second assignment of error is whether the administrative hearing officer erred in holding that Credeur's injury was pre-existing. According to the administrative hearing officer's opinion and several physicians, Credeur is totally and permanently disabled. Following the November 20, 1990, accident, Credeur was diagnosed with TOS. On a previous occasion, she had been tested for TOS but the results were negative. Following the November 20, 1990, accident, five physicians diagnosed her as having TOS and she underwent four surgeries.
Credeur was not diagnosed with TOS until after the November 1990 fall. There is a causal link between the accident and the diagnosis of TOS. The accident was work-related and it rendered her totally and permanently disabled. She should be compensated for her injury.
The administrative hearing officer and the City placed substantial emphasis on *151 Credeur's pre-existing illnesses. However, both overlooked the standard set forth in Gobert v. PPG Industries, Inc., 534 So.2d 111 (La.App. 3 Cir.1988), writ denied, 538 So.2d 596 (La.1989). In Gobert, the court stated that an aggravation of a pre-existing condition is a compensable injury, but only where the aggravating incident was an identifiable and discernable event.
According to medical records, Credeur suffered from work-related illnesses prior to the November 1990 accident. She suffered from both fibromyositis and chronic fatigue syndrome. Her accident in November 1990 was an identifiable and discernable event. Additionally, Dr. Martinez, one of the five doctors who diagnosed her, stated that the accident suffered by her, at a minimum, aggravated her TOS, and in fact could have been the cause of it. According to Dr. Martinez's deposition "if this girl had not had her injury and she would not have had her initial need for thoracic outlet surgery, then perhaps all of this would not have happened. The major thing is the fall at work with the chair going backwards." Thus, medical testimony indicates that Credeur's accident caused a new illness (TOS) and aggravated her pre-existing illnesses.

C. Penalties and Attorney Fees
The third and fourth assignments of error are whether the City acted in an arbitrary and capricious manner in terminating Credeur's benefits and medical compensation. The administrative hearing officer failed to address this issue in her judgment.
An employee is entitled to penalties and attorney fees if workers' compensation benefits are terminated arbitrarily, capriciously, or without cause by the employer. La.R.S. 23:1201(F); La.R.S. 23:1201.2; Faul v. Bonin, 95-1236 (La. App. 3 Cir. 8/7/96); 678 So.2d 627, writ denied, 96-2221 (La.11/15/96); 682 So.2d 769. Whether termination of workers' compensation benefits is arbitrary, capricious, or without probable cause, for purposes of determining entitlement to penalties and attorney fees, depends primarily on facts known to the employer or insurer at time of its action. Creel v. Concordia Elec. Co-op., 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406, writ denied, 96-0577 (La.4/19/96); 671 So.2d 923.
At the time of termination, the City had paid benefits and medical compensation in the amount of $236,839.32 for seven years. Credeur had undergone four years of treatment and four surgeries. During this same period, Dr. Aswell had declared her disabled.
The new adjuster, Mr. Cronin, was aware of Dr. Aswell's statement of disability. However, despite his knowledge, Mr. Cronin failed to request an independent determination of Credeur's disability. Additionally, Mr. Cronin knew that she had symptoms similar to her pre-existing illnesses and she had been diagnosed with a new illness, TOS. The City employed a registered nurse to compare the symptoms that existed before and after the accident. In her testimony, the nurse admits that after the accident, five treating physicians diagnosed Credeur with TOS. The City also employed Dr. Mark Valentine and he concluded that there appeared to be a similar pattern of pain both before and after the injury. However, Dr. Valentine never examined her and was employed only a few months prior to trial. His opinion was not used in deciding whether to terminate Credeur's benefits.
Considering the seriousness of the Credeur's illness and the fact that she had been declared disabled, the City was both arbitrary and capricious in terminating Credeur's benefits without obtaining an independent determination of disability. Thus, La.R.S. 23:1201(F) requires the City to pay a penalty in the amount of 12% of unpaid benefits or $50.00 per calendar day for each day compensation or medical benefits remain unpaid, whichever is greater; *152 however, the fifty dollars per calendar day shall not exceed $2,000.00 in the aggregate.
The awarding of attorney fees for arbitrary and capricious behavior in a workers' compensation case is, of course, a type of penalty. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97); 696 So.2d 1382. According to Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981), factors used in determining attorney fees in worker's compensation cases are the degree of skill and ability exercised, the amount of the claim and the amount of time devoted to the case. After reviewing the appellate record, the massive amount of medical evidence and testimony, it is evident that Credeur's attorney spent a substantial amount of time on this case. According to an expense affidavit, Credeur's attorney spent seventy-two hours preparing for trial. Additionally, we note that her attorney spent additional hours in perfecting this appeal. Considering the time spent, we find that an award of $15,000.00 in attorney fees is reasonable.

CONCLUSION
Credeur proved by a preponderance of the evidence that she had a work-related accident. This event is corroborated by the diagnosis of five physicians, as well as treatment and surgeries associated with the diagnosis. Additionally, the existence of a new illness and aggravation of a preexisting illness establishes that Credeur should be compensated for injuries resulting from the work-related accident. Considering all the medical evidence and the seriousness of Credeur's illness, the City acted in an arbitrary and capricious manner in terminating her benefits and medical compensation.

DECREE
For reasons set forth, we reverse the judgment of the administrative hearing officer upholding the cancellation of Credeur's workers' compensation benefits and we enter judgment against the City, holding them liable for workers' compensation benefits based on an average weekly wage of $384.00, retroactive to March 25, 1997. We find that an award of $15,000.00 in attorney fees for trial and on appeal is reasonable. Furthermore, we agree with Credeur that the termination of benefits was arbitrary and capricious and order the City to pay penalties in the amount of the statutory maximum of $2,000.00 or 12% of unpaid benefits, whichever is greater.
Costs below and on appeal are assessed against Plaintiff, the City of Eunice.
REVERSED.