# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-678

JASON HALKER

VERSUS

AMERICAN SHEET METAL

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT - 3
PARISH OF CALCASIEU, NO. 01-4520
HONORABLE CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE

**********

## NED E. DOUCET, JR.
### CHIEF JUDGE

**********

Court composed of Ned E. Doucet, Jr., Chief Judge, Sylvia R. Cooks, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**H. Douglas Hunter**
**Guglielmo, Lopez, et al.**
**P. O. Drawer 1329**
**Opelousas, LA 70571-1329**
**Counsel for Defendant/Appellant:**
      **American Sheet Metal**

**Marcus M. Zimmerman**
**Attorney at Law**
**910 Ford St.**
**Lake Charles, LA 70601**
**Counsel for Plaintiff/Appellee:**
      **Jason Halker**

DOUCET, Chief Judge.

Defendant, American Sheet Metal (American), appeals a judgment of an Office of Workers' Compensation (OWC) judge finding Claimant, Jason Halker, suffered a compensable accident on March 20, 2000, ordering American to pay for all necessary medical treatment and awarding Claimant weekly compensation benefits of $346.68 from the date benefits were terminated, April 15, 2001, until January 14, 2002, the date he was released to return to work. The OWC judge also ordered American to make up the short-fall caused by its miscalculation of benefits; awarded interest on the back due payments and the short-fall; but denied penalties and attorney's fees. American appealed. Claimant answered the appeal seeking penalties and attorney's fees.

**FACTS**

The following are the "Findings of Fact" found by the OWC judge in her reasons for judgment:

1. Jason Halker was injured during the course and scope of his employment with American Sheet Metal on March 20, 2000.

2. Jason Halker was involved in a previous accident during the course and scope of his employment with American Sheet Metal on March 17, 1999 [sic].

3. Claimant settled his claim for the March 17, 1997 accident. The settlement documents state, in part, "The employee initiated treatment with a local orthopaedist, Dr. Lynn Foret. Dr. Foret diagnosed bilateral DeQuarvain's. A surgical release of the right wrist was performed on or about April 28, 1997. A similar surgery was offered on the left wrist, but refused by the patient. Given the employee's reluctance to proceed with further treatment, Dr. Foret ordered a functional capacity evaluation. This evaluation was completed at the Industrial Rehabilitation Center of Lake Charles Memorial Hospital on June 23 and 24, 1998. The results of this evaluation showed the employee could return to work at medium level. Dr. Foret has no further treatment to offer.

4. Claimant had an EMG/nerve conduction study of the left extremity in 1998 that was normal.

5. On August 21,2000, EMG nerve conduction studies were done on claimant and were interpreted as mild to moderate left carpal tunnel syndrome.

6. Dr. Foret had not seen claimant from July 17, 1998 until the second incident occurred.

7. Dr. Lynn Foret, claimant's treating physician, performed a left carpal tunnel release on claimant on September 27, 2001. On January 9, 2002, Dr. Foret indicated "the patient has finished up on the left side. The left hand was reviewed of his injuries with the second accident it irritated and aggravated and caused essentially went into the carpal tunnel on the left side..." His impression was that claimant's left hand was healed and he was released to go back to work.

8. Prior to the carpal tunnel surgery, Dr. Holland, defendant's choice of physician opined claimant had subjective left wrist pain, with no significant ,-- - injury. He was of the opinion that claimant did not need surgery and could work.

9. Dr. Clark Gunderson, the Independent Medical Examiner, opined that claimant complaints were not related to a nerve root entrapment syndrome. He did not recommend a carpal tunnel surgery. He recommended a course of Occupational Therapy and indicated he may be a candidate for evaluation by someone who limits their practice to hand and upper extremity surgery.

10. Defendants sent claimant to a hand specialist, Dr. Joe Morgan. Dr. Morgan, testifying by deposition, indicated "I thought the de Ouervain's tendinitis went back to the time when he had had the problem back in '97, and I thought that was something that was ongoing from back then. I thought it was not caused by anything that occurred in 2000, and I didn't think that the carpal tunnel syndrome was caused by injury. You can have carpal tunnel syndrome caused by injury. If it is caused by injury, it can be caused after someone has something like a fractured wrist, and we call that acute carpal tunnel syndrome, and they will probably require surgery early to get the pressure off the nerve. Otherwise, people have carpal tunnel syndrome for no particular reason. It just comes about over time. . . ."

The record supports these findings. Additionally, the OWC judge reached the

following "Conclusions of Law:"

As a general rule, the testimony *of* a treating physician should be given more weight than that *of* a physician who examined a claimant for diagnostic purposes. *Johnson v. NA TCO*, 651 So.2d 494 (La. App.3 Cir. 3/1/95). In this case, Dr. Foret's opinion is given greater weight than the opinions *of* the other physicians. Dr. Foret opined that claimant's second

2

injury aggravated and essentially caused the carpal tunnel on the left side.

The significant weight given to the opinion of the court appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness. Thus, the significant weight can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors. *Brock v. Morton Goldberg Auction,* 671 So.2d 1008 (La. App. 4 Cir. 3/14/96). In the case at hand, in reference to the independent medical examiner, Dr. Gunderson, the court finds that his opinion is not conclusive as he referred claimant to a hand doctor. The hand specialist, Dr. Morgan, did not entirely agree with Dr. Foret; however, he agreed that claimant would need a carpal tunnel surgery.

Therefore, after reviewing the record, considering the law and the evidence, the court finds that claimant suffered a new and compensable accident on March 20, 2002 [sic] during the course and scope of his employment with American Sheet Metal and Fabrication, Inc.

It is well settled that an employer should not be penalized for bringing close factual *or* legal issues to court. *Lindon v. Terminix Services, Inc.,* 617 So.2d 1251 (La. App.3 Cir.), *writ denied*, 624 So.2d 1226 (La. 1993). Based on the evidence presented and the inconsistencies in medical testimony, the court finds this claim was reasonably controverted. However, costs are to be paid by the defendant.

## LAW AND DISCUSSION

The law as set forth by the OWC judge is correct. Additionally, we note that the following is well settled:

In compensation cases, the claimant has the burden of showing that more probably than not an employment accident occurred and that it had a causal relation to the disability suffered. *Delco v. Heritage Manor Nursing Home*, 441 So.2d 309 (La.App. 3d Cir.1983), *writ denied*, 443 So.2d 1123 (1984). A worker's preexisting condition does not bar his or her recovery under the workers' compensation laws because an employer takes the worker as he finds him or her. *Guillory v. U.S. Fidelity & Guaranty Ins. Co.*, 420 So.2d 119 (La.1982); *Frederick v. Town of Arnaudville*, 572 So.2d 316 (La.App. 3d Cir.1990), *writ denied*, 575 So.2d 373 (1991). An abnormally susceptible worker is entitled to no less protection under the workers' compensation statute than a healthy worker. It is immaterial that the diseased or weakened condition of the worker might eventually produce the disability suffered outside of the employment situation. *Guillory, supra*; *Toth v. Ensco Environmental Services*, 546 So.2d 188 (La.App. 1st Cir.), *writ granted,*

*reversed in part on other grounds*, 551 So.2d 623, *writ denied*, 551 So.2d 632 (1989). Said another way, the worker's claim for disability benefits will not be disqualified if the work-related injury aggravates, accelerates, or combines with a disease or infirmity to produce death or disability for which compensation is claimed. *Cadiere v. West Gibson Products, Co., Inc.* , 364 So.2d 998 (La.1978); *Delco, supra*; *Toth, supra*.

*Baker v. Conagra Broiler Co.*, 93-1230 , pp. 8-9 (La.App. 3 Cir. 5/4/94), 640 So.2d 494, 498, *writ denied*, 94-1435 (La. 9/23/94), 642 So.2d 1289.

Furthermore, in *Tate v. Cabot Corp.*, 01-1652, pp. 5-7 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461-62, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044, this court observed the following:

> Because an employer takes his employee as he finds him, a preexisting condition does not prevent recovery through workers' compensation. *Curtis v. Wet Solutions, Inc* ., 98-789 (La.App. 3 Cir. 12/9/98); 722 So.2d 421. Aggravation of a preexisting injury may constitute a disabling injury when, for example, the plaintiff begins to suffer new symptoms after the second workplace accident. *Howell v. Service Merchandise Co., Inc.*, 95-79 (La.App. 3 Cir. 8/9/95); 663 So.2d 96. To be compensable, the aggravation of a preexisting injury must result from an identifiable and discernable incident. *City of Eunice v. Credeur*, 99-302 (La.App. 3 Cir. 10/13/99); 746 So.2d 146, *writ granted in part, judgment vacated in part*, 99-3249 ( La. 1/28/00); 753 So.2d 226. Moreover, there must be a causal link between the aggravation and a work related incident. As we have recently explained,

> > [a] pre-existing disease or infirmity does not disqualify the claimant from receiving benefits if the workplace accident aggravated, accelerated, or combined with the disease to produce the disability for which compensation is claimed. Thus, the element of causation is satisfied if the employee's work-related accident was a *factor* in bringing about the employee's disabled status. Whether a causal relationship exists between the disability and the employment is a question of fact. The hearing officer's determination in this regard cannot be reversed unless it is manifestly erroneous based on examination of the record as a whole.

> > The employee's workplace accident is presumed to have caused or aggravated her disability when she proves that: (1) before the accident, she had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility

of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.

*Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95); 664 So.2d 750, 755, *writ denied*, 95-3093 (La.2/16/96); 667 So.2d 1058 (citations omitted). In *Rideaux*, we went on to explain that "[t]he presumption of causation may attach to a claimant who exhibited symptoms of her allegedly disabling illness in the distant past provided that she had suffered no such symptoms *immediately* prior to her workplace accident." *Id.* at 756. The claimant in *Rideaux* was asymptomatic prior to her accident, and her disability manifested itself only after her fall. Finding no error with the hearing officer's conclusion that the employer failed to rebut the presumption of causation, we simply said that though the claimant was able to perform her job prior to her fall, she was rendered unable to do so subsequent thereto. As such, she was entitled to the presumption of causation.

Claimant was first injured on March 17, 1997. A surgical release of his right wrist was performed in April of that year. He was offered the opportunity to have the same procedure done on his left wrist, but declined. On October 5, 1998, he entered into a compromise of all claims associated with the 1997 accident. That compromise indicates that in June 1998, an evaluation at Lake Charles Memorial Hospital's Industrial Rehabilitation Center concluded that Claimant could return to work "at medium level."

Dr. Foret's medical records indicate that bilateral EMG studies were performed on Claimant on July 10, 1998. His notes of Claimant's July 17, 1998 visit do note "some weakness and pain to his wrist," but, significantly, the notes fail to document that the EMG was positive for carpal tunnel syndrome in the left wrist. In fact, in a report dated October 19, 2000, Dr. Michael Holland stated: "It is noted that he had completely normal electrical studies done on both upper extremities in July 1998."

Claimant did not return to Dr. Foret until four days after his March 20, 2000 accident. A subsequent motor conduction study was done by Dr. Paul E. Mayes on

August 21, 2000.  Dr. Mayes' report of that study states: "Electrophysiologic finds suggest: (1) Mild to moderate left carpal tunnel syndrome, with axonal involvement [; and] (2) Left ulnar neuropathy, at or about the elbow, with axonal involvement."

Considering that Claimant sought no medical care for his left arm/wrist for over two years, his apparent lack of symptoms during that time, the facts that he had normal electrical studies on both arms in July 1998 and that he sustained an injury on March 20, 2000, which resulted in onset of symptoms, plus the existence of medical evidence which establishes that the March 20, 2000 accident was the most reasonable explanation for his injury and disability, we agree with the findings of the OWC judge that "[C]laimant suffered a new and compensable accident on March 20, 200[0] during the course and scope of his employment."  In reaching our decision, we also considered the report of Dr. Clark A. Gunderson (which was adverse to Claimant) and that of Dr. Joe A. Morgan (which supported Claimant).  For those same reasons, we find the OWC judge was correct in denying American any set-off or credit against Claimant's settlement of his 1997 accident.  The March 2000 accident was a separate and distinct event, following a period of two years in which Claimant had sought no medical treatment for left arm or wrist pain.

Based upon a report by Dr. Joe Morgan following his examination of Claimant on March 20, 2001, and his review of Claimant's medical records, Defendant terminated Claimant's weekly benefits on April 15, 2001.  The OWC judge found this to be erroneous and reinstated Claimant's benefits from April 15, 2001 through January 14, 2002.

As to the OWC judge's awarding Claimant benefits through January 14, 2002, when he was released to return to work by Dr. Foret, Claimant's treating physician, we note that "'[t]he testimony of a claimant's treating physician should be afforded

6

more weight than that of an examining physician, since the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations.'" *McCall v. Wal-Mart Stores, Inc.*, 02-1343, p. 4 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, 835, *citing George v. Guillory*, 00-0591, p. 10 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1207. We find no evidence in the record which would support a finding that the OWC judge was clearly wrong in accepting Dr. Foret's opinion on the matter.

Finally, we address American's allegation that the OWC judge miscalculated Claimant's weekly compensation benefit. American bases its argument on La.R.S. 23:1021(10)(a)(ii). We find American's reliance thereon misplaced. We find the facts in this case almost identical to those in *Baldwin v. Greater Lakeside Corp.*, 93-768, pp. 6-8 (La.App. 5 Cir. 1/25/94); 631 So.2d 1238, 1242-43:

> In appellants' third and fourth assignments of error, they argue that Mr. Baldwin's compensation rate was incorrectly calculated and that they are entitled to a credit for overpayment. An injured worker's average weekly wage is determined by applying LSA-R.S. 23:1021(10)(a), which provides:
>
> Hourly wages.
>
> (i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
>
> (ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
>
> (iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.

7

Appellants assert that the hearing officer incorrectly used subsection (i) to calculate appellee's compensation rate. They contend that the hearing officer should have used subsection (ii), arguing that prior to his accident, Mr. Baldwin regularly, and at his own discretion, worked less than forty hours per week. To support this argument, appellants offer the testimony of Ms. Donna Mumphrey, the special projects manager for Greater Lakeside Corporation. Ms. Mumphrey testified at trial about Mr. Baldwin's earnings records prior to his accident. She testified that work was available to Mr. Baldwin on a forty hour per week basis, but that he only worked one forty hour week from January through July 1988. On cross-examination, Ms. Mumphrey admitted that she was not Mr. Baldwin's supervisor and that she was not aware of any actions taken against Mr. Baldwin for not working more than he should have.

Mr. Baldwin testified at trial that he was employed as a roofer by Lakeside beginning in November of 1987, and that he worked as many hours as he was offered. He testified he could not work when it was raining, and he would either be sent home or told to wait until the rain stopped. He testified that he was never reprimanded for not being at work and was always willing to work forty hours per week. The hearing officer found that appellants failed to show Mr. Baldwin regularly, and at his own discretion, worked less than forty hours per week.

In finding that Mr. Baldwin's compensation rate should be calculated under LSA-R.S. 23:1021(10)(a)(i) using forty hours per week, the hearing officer relied more on Mr. Baldwin's testimony than on that of Ms. Mumphrey, who admitted that she was not Mr. Baldwin's supervisor and had no personal knowledge of why he worked less than forty hours per week prior to his accident. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Rosell v. Esco*, 549 So.2d 840 (La.1989). Accordingly, the hearing officer did not err in calculating Mr. Baldwin's compensation rate.

*See also, Clark v. Schwegmann Giant Supermarket*, 96-2301 (La.App. 4 Cir. 1/13/99), 740 So.2d 137.

In the case sub judice, Mrs. Robin Halker, American's bookkeeper, testified that Claimant had returned to full-time, 40 hour-per-week status, on January 4, 2000. She further testified that when work was available, Claimant was there and that he never refused any work. Accordingly, we, as did our brethren of the fifth circuit, find no error in the compensation rate as calculated by the OWC judge.

8

Claimant answered the appeal seeking penalties and attorney's fees. As stated above there was contradictory medical evidence presented in this case. The OWC judge noted that neither Dr. Gunderson nor Dr. Morgan completely agreed with Claimant's treating physician, Dr. Foret. In denying Claimant's prayer for penalties and attorney's fees the OWC judge stated:

> It is well settled that an employer should not be penalized for bringing close factual *or* legal issues to court. *Lindon v. Terminix Services, Inc.,* 617 So.2d 1251 (La. App.3 Cir.), *writ denied*, 624 So.2d 1226 (La. 1993). Based on the evidence presented and the inconsistencies in medical testimony, the court finds this claim was reasonably controverted.

We find no clear error in that determination.

For the foregoing reasons, we affirm the judgment of the OWC judge. All costs of this appeal are assessed against Appellant, American Sheet Metal.

**AFFIRMED.**