No. 405

First Circuit

FIRST BAPTIST CHURCH OF COVINGTON v. JACKSON ET AL.

(March 6, 1929. Opinion and Decree.)

Morgan and Simmons, of Covington, attorneys for plaintiff, appellee.

Miller and Heintz, of Covington, attorneys for defendants, appellants.

ELLIOTT, J. First Baptist Church of Covington, Louisiana, appearing and acting through Alex Showers, George L. Wallace, Ed Obleton, Robert Tyson and Estelle Cole, as trustees, and twenty others as members, brought suit against F. P. Jackson, Granville Moore, Phillip Landaugh, Soloman Finn, Elizah Geddings, Isaiah Daniels, Ernestine Rapies and Henry Hoggins. It prays for judgment against them, enjoining and restraining them from disposing, selling or interfering with its use of Lot No. 9 of Square No. 2701, situated in the town of Covington, Louisiana; acquired by First Baptist Church March 2, 1898, from Covington and St. Tammañy Land and Improvement Company, by title recorded in Book S, p. 708, of the conveyance records of the

Parish of St. Tammany, and for damages against them in solido for $3000.00.

The plaintiff alleges that the said defendants, acting and proceeding under a pretended resolution of alleged members of plaintiff, which they each knew to be false, fraudulent and illegal, have undertaken to destroy and demolish the church erected on its above described premises by the plaintiff corporation many years ago. That said parties, acting under said resolution, have entered into a conspiracy to destroy the church, sell the lot upon which it was constructed, and in fact will attempt to sell and transfer same and thereby deny to its members who have incurred their displeasure, the right to worship therein.

That said parties proceeding as aforesaid have torn down and removed said church building and converted the lumber and material to their own use and purposes. That their actions and movements constitute a wilful trespass upon and against the rights of petitioner and the members thereof.

Four of the members named by the plaintiff in the petition appeared in court before any action was taken thereon, and declared that their names had been used therein without their knowledge or consent. Their names were thereupon stricken out of the petition.

Ernestine Rapides, sued as Ernestine Rapies, Granville Moore and Henry Hopkins, the latter sued under the name of Henry Hoggins, appeared and for answer to plaintiff's demand, claimed to have had nothing to do with the acts charged in the petition, and to know nothing about same, and for lack of information sufficient to justify belief as to the allegations from 1 to 9, inclusive, they each denied same; except that Henry Hopkins, further answering, acknowledged that he had, at the request of Phillip Landaugh, Soloman Finn, Elijah Geddings, Isaiah Daniel and Leon Washington, deacons of plaintiff, assisted in demolishing the building.

F. P. Jackson, Phillip Landorf, sued as Phillip Landaugh, Solomon Finn, Lije Geddings and Isaiah Daniel, for answer denied that Alex Showers, George L. Wallace, Ed Obleton, Robert Tyson and Estelle or Estil Cole, named in the petition as trustees, were trustees or deacons or officers of any kind of First Baptist Church. They further denied that the persons named in the petition as members, were members of said church, except Ed Obleton, Ada Obleton, Ada Crockett and Pauline McCoy, called in the petition Pauline McCayle. They also denied that plaintiffs or any of the persons named in the petition as supporting the action, had the legal right to bring the suit in question, as trustees or officers or members of First Baptist Church, or in behalf of said church.

They allege that defendant F. P. Jackson is and was the pastor of First Baptist Church, and that W. McCarthy Williams, Phillip Landorf, Lije Geddings, Isaiah Daniel, Leon Washington, Soloman Finn and Estil Cole are and were plaintiff's deacons at the time mentioned. That at a conference or meeting of the members on February 21, 1927, duly called and held, a resolution was adopted authorizing the pastor and deacons to arrange for the purchase of a new site, the erection of a church building and to erect such buildings, demolish the old building and use the material therein in the construction of a new church. That they, with McCarty Williams and Leon Washington are the only persons who have authority to bring suit in the name of, for the benefit of, or in behalf of First

Baptist Church and that plaintiffs are wholly without right or legal or religious authority to sue in the name of or in behalf of said church, and should be prohibited from doing so.

They pray that plaintiff's demand be rejected; that they be prohibited and restrained from claiming to be the First Baptist Church of Covington, Louisiana, or from taking any action in the name of said church, and from claiming or pretending to be officers of said church, etc.

In an amended and supplemental answer they allege that a meeting was held under the direction of Hon. Wallace M. Poole, mayor of Covington, on December 2, 1927, for the purpose of settling the dispute which had arisen in the church on the subject of tearing down the old building, selling the site, purchasing a new one and using the material of the old building in constructing a new church on the new site. At this meeting there were present about twenty-eight members of the congregation; that twenty-one of them voted in favor of the action of the pastor and deacons, in the matter, and seven against it. That thereupon the Mayor declared and decided that the action of the pastor and members was ratified and approved by the congregation and should stand as an action of the congregation. That many of the plaintiffs were present at and voted in said meeting and those who did so, were estopped from bringing this suit. That the names of the plaintiffs who participated in said meeting would be shown upon the trial.

That the government of a Baptist church is by the members thereof and that the action of a majority is binding upon the whole. That therefore the action of the members at said meeting before the Mayor had finally settled all the questions

attempted to be raised by the petitioner herein.

The plaintiff remitted, before the trial, all claim for damages above $1900.00.

Judgment was rendered in favor of First Baptist Church of Covington, Louisiana, and against the defendants, enjoining and restraining them from selling the lot in question with the buildings and improvements thereon, and from interfering with the use of same by plaintiff, but plaintiff's demand for damages was refused as in case of non-suit.

The defendants have appealed.

Neither side has filed briefs.

The record shows that the First Baptist Church of Covington, Louisiana, was incorporated August 3, 1907, under Section 677, (amending Act 45 of 1878) for religious purposes, by charter bearing date August 3, 1907. The Act 254 of 1914 is therefore not the governing law. Plaintiff's powers are such as were conferred by the Revised Statutes, Section 680, and Civil Code Arts. 433 and 434. Under the law and under its charter the plaintiff received and has power to buy and sell real estate, to sue and be sued, and to make rules, by-laws and ordinances needful for its good government and support.

In alienating real estate, such corporations must be governed by the provisions contained in its charter, on that subject. Civil Code Arts. 456 and 484, and Revised Statutes, Section 681. Its charter contains no specific directions on that subject, but Art. 4 of its charter provides that:

"The corporate power of said corporation shall be exercised by a Board of Trustees composed of not less than 5 nor more than 9 persons, five of whom shall constitute a quorum for the transaction of all business. Said board shall

be elected on the 4th Saturday of December in each year, and it shall, immediately after election, select from their number a president, secretary and treasurer. Said officers shall be members of said congregation in good standing. The said trustees shall continue in office for one year, and until their successors are elected, and no failure to elect shall be regarded as a forfeiture of the charter. Any vacancy occurring in said board or among the officers shall be filled by the remaining trustees for the unexpired term. In case of the absence or inability of the president or secretary and treasurer the board shall appoint from among their number a president or secretary and treasurer pro tempore, as the case may be."

The charter then names nine persons to constitute the first Board of Trustees. Robert Tyson, Alex Showers and Henrietta Davis, called in the petition, Harriet Williams, were among its incorporators. Robert Tyson was named as one of its first trustees.

As defendants deny that the parties named in the petition as plaintiff's trustees, are in fact such, and claim that plaintiff has no right to appear in court and act through them; that its governing officers are those named in their answer, and deny that all except those mentioned, alleged in the petition to be members, are in fact such; the question as to which set of officers, those alleged by plaintiff to be such, or those alleged to be its officers by the defendants and by plaintiff's membership at the time the opposing resolutions were passed, presents an important question in the case.

The charter provides that the president and secretary of the Board of Trustees shall be members of the Board.

The resolution of the plaintiff on November 12, 1927, was adopted at a meeting which was presided over by a president who, according to the resolution, was a member of the board, and the secretary was also, according thereto, a member of the board. The charter requirements on that subject were complied with. But the resolutions offered by defendants purport to have been adopted at meetings at which the presiding officers were neither deacons nor trustees; nor even members of the church, and the secretaries of these meetings were likewise not deacons nor trustees. The meetings relied on by defendants were therefore not held as provided for by the charter.

The charter also provides that plaintiff's governing board shall be called trustees.

In the answer of the defendants the governing board, on which they rely, is called deacons, but this difference in name is not important.

The charter provides that a Board of Trustees shall be elected annually on the fourth Saturday of December. Neither side claims officers elected on that day. Neither side bases any objections to the opposing ordinances and officers on that ground, consequently matters of this kind will have no weight in our conclusion. But the fact that the resolutions which the defendants set up were adopted at meetings, not held as provided for in the charter, is a matter which we take into account.

Plaintiff did not keep a written record showing members taken into or excluded from the church, or deprived of the privilege of membership, for failure of duty as members, etc. A solitary instance to the contrary appears in the resolution of April 12, 1926, offered by defendant, which shows that Delia Hart and Miles Sales were received back into the church.

The defendants introduced in evidence a list of members. Opposite the names

of some appears the word "dropped," and across that of others appears a pencil mark. We infer from this that the parties, at the time the list was made out, did not belong to the church.

The plaintiff offered evidence showing that the list which the defendant introduced was not correct; that there were other members whose names did not appear on that list. The evidence introduced by the plaintiff on the subject was not seriously disputed.

The evidence shows a strong partisan feeling as to who are and were plaintiff's officers and members at the time this controversy commenced. The officers and membership of plaintiff are different, according to their alignment in the present controversy. The question of membership cannot be safely judged from the opposing views on the subject. The most reliable guide appears to be the sworn testimony of those called and questioned on the subject in the presence of the court.

Plaintiff introduced witnesses who testified that they were members, and also as to the membership of others. The defendants objected and insisted that the membership roll, showing members and officers elected, as they contend for, was binding on the plaintiff. The court ruled otherwise; and under the circumstances, his ruling was correct.

The membership of the parties who composed the meeting on November 12, 1927, at which Alex Showers, George L. Wallace, Ed Obleton, Robert Tyson and Estelle Cole were elected trustees of plaintiff, seems to be established by the testimony of Mary Nelson, Estil Cole, Robert Tyson, Alex Showers, Lucille Williams, Annie Warren, J. D. Brandon, Rev. W. A. McCoy, called in the petition Rev. McCayle, George L. Wallace, Lottie Phillips, Corinne Phillips, Ed Obleton, Ada Obleton, Ada Crockett and Pauline McCoy, called in the petition Pauline McCayle. There is no evidence to the contrary as to any of them, except as to George L. Wallace and Robert Tyson.

Several witnesses called by the defendant testified that George L. Wallace and Robert Tyson had quit the First Baptist Church and joined the Second Baptist Church. The parties themselves testified that they had, for reasons which they gave, ceased attending First Baptist and put themselves temporarily under the care of the other church; but they denied that they had removed their membership from First Baptist, but had retained their membership therein. No exclusion was established against them. John Cole corroborated the claims of George L. Wallace. We find that both parties are to be regarded as members of First Baptist Church, as claimed by them.

Defendants allege in their answer and it is shown by their resolutions, that Estil Cole is a member. He is claimed by defendants as one of their deacons, and also by the plaintiff as one of its trustees. The testimony of Estil Cole shows that he claims to be a trustee, as the result of the meeting of November 12, 1927, and supports the action of the plaintiff.

Rev. W. A. McCoy and Lottie Phillips are named in the petition as being present at the meeting of November 12, 1927, at which plaintiff's alleged trustees were elected. These parties testify that they were not present at the meeting and did not authorize use of their names in the suit. But their testimony shows that they are members of the church and in sympathy with the contentions of the plaintiff.

Alex Showers testifies that the 25 parties, said in the resolution of November 12, 1927, to be members and present at the meeting, were in fact members and were present and voted, as the resolution indicates. That trustees were elected and suit authorized as stated in the resolution seems to be and will be taken as true, except as to two parties mentioned above.

In regard to the defendants and their claims as to who are and were plaintiff's officers, their contentions are based on resolutions adopted April 12, 1926, and February 21, 1927. This last resolution shows that Solomon Finn was recommended for a deacon, and closes with mention of "trustees or deacons"—Estelle Cole, Isaiah Daniel, Phillip Landorf, Elijah Geddings, Lee Washington and Solomon Finn. We gather from the evidence that they were, all except Finn, already deacons, and had been made such at previous meetings.

The resolution adopted at the meeting April 12, 1926, shows that W. McCarthy Williams, Phillip Landorf and Elijah Geddings were recognized as deacons, and that Miles Sales, Isaiah Daniels, Leon Washington and Estil Cole were also chosen as such by the congregation at the same time. But the evidence shows that none of the parties called deacons by defendants have been ordained as such, unless it was W. McCarthy Williams.

The note of testimony shows that plaintiff took the position that these parties were not ordained deacons and that ordination was necessary to official status. The defendants took the position that ordination was not essential. F. P. Jackson, plaintiff's pastor, defendant, testified to that fact. But this position on the part of defendants is not in harmony with the resolution of April 12, 1926, offered in evidence by them.

It appears from this resolution that Phillip Landorf, one of the defendants, and a few members had called a pastor. Their action in doing so was, on motion of W. McCarthy Williams, set aside and declared null and void, because Phillip Landaugh was not an ordained deacon and F. P. Jackson was elected pastor. It therefore seems that defendants, on this previous occasion looked on ordination as essential in order to give official status. It seems to us that the evidence requires that it be so held. It therefore follows that the deacons named in the answer of the defendants base their status as such on meetings, not held as provided for in the charter, and that they in addition, except W. McCarthy Williams, have not been ordained as such. But this does not determine the controversy as regards the right to tear down the old church, sell the lot, buy a new site and erect a new church thereon.

The defendants allege in their answer that in Baptist churches the governing power is vested in the membership. Defendant's position on that subject is correct, according to the testimony.

"In corporations the act of the majority is considered as the act of the whole." Civil Code, Art. 444.

As for the act of the defendants in tearing down the church building and removing the materials to another site, plaintiff not having filed a brief nor answered the appeal, and not having itself appealed from the judgment refusing its demand for damages as in case of nonsuit on that account, that part of the judgment will not be reviewed. The remaining question is, whether the lower court should

be sustained in restraining defendants from selling the lot in question and from interfering with plaintiff in the use of same.

F. P. Jackson, pastor, and several of the other defendants testify, without contradiction, that he as pastor, had frequently given it out from the pulpit that the tearing down of the church building, selling of the lot, purchasing a new site and building a new church thereon was being considered.

A witness speaking of the objections to the old church stated that garbage was thrown in front of it, and that intoxicated people passed there and disturbed the services.

The evidence does not show, and the resolution of February 21, 1927, does not say, how many members were present at that meeting. It says that a motion to purchase a new site and rebuild was carried. Estelle Payne, secretary, says that there were a good many persons present, and she named several, but could not and would not express an opinion as to the number present. It seems from the resolution and evidence on the subject that this was not a congregational meeting, but rather a business meeting of officers. Lije Geddings speaking of the meeting says:

"Q. What took place?
"A. We wanted them all to come in. Nobody come, and we wanted to be the biggest majority anyhow and we went ahead to change the church; then when we got them—"

The witness was here interrupted and did not finish his answer. He was asked about notices of the meeting, etc.

Solomon Finn, speaking of the procedure looking to the tearing down of the old church and moving to another site, says that the deacons appeared at the meeting and decided on a plan and then when the members met they accepted it. That some thirty members were present at the meeting on July 26, 1927, at which the plan was accepted. Phillip Landaugh was present; he could not read or write, but his name was attached to the proceedings by his authorization. He does not say how many were present, but speaks of all present being members of the First Church. Isaiah Daniel, who was also present, says that the meeting on July 26, 1927, was attended by about 30 members, but further questioned, he says that the number was about 20, 22 or 23 or something like that. The resolution adopted at this meeting on July 26, 1927, purports to have been signed by 30 members, but none of them were called to prove their attendance and membership, except that the same is testified to, as above stated.

The list of church members, according to the list produced by defendant, not counting those opposite whose names the word "dropped" has been written, nor those across whose names appear a pencil mark, amount to 52; but we have already had occasion to hold that this list was shown to be not correct, and that there are quite a number of members whose names are not carried on this list.

Hon. Wallace M. Poole, mayor of Covington, was called as a witness by defendants and asked what took place at a meeting held before him. He said that those who voted before him were not those who had been, but were, members at the time of the meeting. He subsequently admitted that F. P. Jackson, one of the defendants, was his authority for that statement. After reading his evidence and the evidence of others concerning this meeting, we are satisfied that it was gotten up by the defendants, and that it is not a safe guide as to the status of membership, nor as to the attitude of the mem-

bers on the subject, as to which the church was divided.

The question of membership or the right of defendants to tear down the old church, sell the site and buy and erect in a new place, was not a matter which could be decided before the Mayor in the way mentioned.

On the side of the defendants the showing is not as satisfactory nor as well supported as that of the plaintiff. And it is impossible for us to say, from the situation disclosed by this record, that the lower court erred in granting the injunction against defendants preventing the sale of the lot and interference with plaintiff, as regards the use of the same.

The lower court had the witnesses before him and in this way had some foundation on which he could base his conclusion, which we do not have.

We have therefore concluded that the judgment appealed from should be affirmed.

It may be that the church should be removed; that is a matter for the membership to decide. The judgment will not prevent the congregation from selling the lot in question and moving the location of the church elsewhere, if it sees fit, by action taken at a congregational meeting duly called and held and favored by a majority present.

The judgment that we render is based on the ground that we are unable to say, from the present record, that defendants have authority to sell the present site, nor to prevent its use by plaintiff and its members for religious purposes, and as declared in the charter.

Judgment affirmed, defendants and appellants to pay the costs in both courts.