STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-168

ROBERTA BROUSSARD

VERSUS

STINE LUMBER COMPANY

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 07-194
SHARON MORROW, WORKERS' COMPENSATION JUDGE

************

PHYLLIS M. KEATY
JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, Elizabeth A. Pickett, Billy
Howard Ezell, and Phyllis M. Keaty, Judges.

Cooks, J., dissents and assigns written reasons.
Pickett, J., dissents for the reasons assigned by Judge Cooks.

REVERSED.

Michael B. Miller
Attorney at Law
Post Office Box 1630
Crowley, Louisiana 70527-1630
(337) 785-9500
Counsel for Plaintiff/Appellant:
    Roberta Broussard

Christopher P. Ieyoub
Plauche, Smith & Nieset, LLC
Post Office Drawer 1705
Lake Charles, Louisiana 70602-1705
(337) 436-0522
Counsel for Defendant/Appellant:
    Stine Lumber Company

**KEATY, Judge.**

In this workers' compensation case, the plaintiff-employee allegedly injured herself while lifting paint cans at work, which resulted in back, neck, and shoulder pain, and facial numbness. After considering the law and the evidence, the workers' compensation judge (WCJ) ultimately found that there was an accident and the employee had been injured; that the employee was unable to prove that she was incapable of returning to work; and that her benefits would be terminated. Additionally, the WCJ assessed penalties and attorney fees against the employer in the amounts of $8,000.00 and $12,000.00 respectively. Both the employer and the employee appeal that judgment. Finding that the WCJ was manifestly erroneous in determining that there was an accident as defined by La.R.S. 23:1021(1), we reverse.

## FACTS

Roberta Broussard was a fifty-seven-year-old employee who had been employed in the hardware department at Stine Lumber Company for a number of years before allegedly suffering an accident on February 21, 2004. On that day, Broussard was working in the paint department and was asked by a customer to mix several gallons of paint. Although she knew that lifting the cans of paint would hurt her back and that assistance was available so that she did not have to lift anything, Broussard helped the customer with the request. The customer wanted approximately four gallons of paint mixed. She lifted each one-gallon paint can separately.

Later that day, her back began to hurt. She reported the alleged incident and correlating pain to her manager and then continued working her shift. Several days later, she complained to the same manager of numbness in her face, in addition to the initial back pain. She was sent to the company doctor, Dr. Kerry Kilgore. Ultimately,

Dr. Kilgore referred her to Dr. Stan Foster, an orthopedic physician, for a second opinion.

Dr. Foster treated Broussard conservatively for her shoulder pain. Eventually, Dr. Foster referred Broussard to Dr. Ricardo Leoni, a neurosurgeon, for treatment of her neck pain, while he continued to treat her shoulder pain.

Dr. Leoni performed two surgeries on Broussard's neck. In June of 2006, after determining that there was nothing more he could do for Broussard, Dr. Leoni referred her to Dr. John Schutte, an orthopedist. She presented to Dr. Schutte complaining of shoulder pain and facial numbness.

Dr. Schutte determined that her shoulder symptoms were mild and that she did not have enough pain to warrant surgery or to quit work. He testified that Broussard wanted to do something more, even though he did not think pain management or rehabilitation would improve her condition. He then ordered a Functional Capacity Evaluation (FCE), which was not conducted until nearly nine months later.

Broussard only completed three of the eight hours of FCE testing. The therapist ended the evaluation because Broussard complained of pain and her blood pressure increased when she made the complaints. After reviewing the FCE, Dr. Schutte determined that the FCE did not reflect her physical capabilities, released her to return to light-duty work, and determined that she no longer needed chiropractic care with Dr. Donald Marx.

Broussard then saw Dr. John Cobb for her shoulder pain and to determine whether her low back pain was caused by the alleged accident on February 21, 2004. Intermittently, between the date of the accident and the date of trial, Broussard attended physical therapy sessions that were ordered by Drs. Foster and Leoni, and

saw her chiropractor, Dr. Marx, for palliative relief of her pain. Broussard continued to work in her capacity as manager of the hardware department on a full-time basis for nearly nine months after the alleged accident occurred.

Prior to the alleged injury on February 21, 2004, Broussard was injured in a 1991 car accident with an eighteen-wheeler, a 1992 tree-cutting accident, a 2000 work-related accident, which resulted in low back and right arm pain, and a 2001 work-related accident in which a peg board and merchandise fell on top of her, injuring her neck. She failed to provide a complete medical history to any of her treating physicians after the 2004 accident. Additionally, if she told her doctors about past pain stemming from the other accidents, she claimed the pain had dissipated, though her testimony in court was that the pain was intermittent since those previous accidents.

Broussard's medical records show that she had complaints of low back pain, left and right shoulder pain, and numbness in her face dating back to at least 2000. In 2000, she suffered a work-related accident and injured her back. Although she stated that her back pain from the 2000 injury resolved, evidenced by the fact that she kept working, she also testified that every time she worked in the paint department it would flare up.

She confirmed that Stine provided help for people who needed help lifting or moving items, testifying that "I was just told that I needed to call for—you know, I could call for help, and they would come help me." Despite knowing that working in the paint department caused her back pain to flare up and that she could call for help and someone would assist her, Broussard mixed and lifted paint cans for a customer on February 21, 2004.

In January 2007, Broussard was released by Dr. Schutte for light-duty work, and Stine offered her a position answering the telephone. She was provided a chair located within reach of the telephone. She was allowed to get up and move around whenever she needed. Broussard testified that the pain was so severe that she was unable to sit down and answer the phone; that she had to leave work because of the pain; and that, as a result of the pain, she had to seek chiropractic treatment from Dr. Marx.

In a second attempt to provide Broussard with employment that she was physically able to do, Stine offered Broussard a choice of three light-duty positions in 2008. Broussard's attorney informed her of the available positions, and Broussard responded that she would check into it. She never did.

From February 2004 until April 29, 2009, the date of trial, Broussard saw at least seven doctors[1] and a physical therapist. Numerous diagnostic tests were performed, including a CT scan of the cervical area, MRIs of the cervical, brain, and lumbar areas, cervical and lumbar x-rays, a bone scan, and a cervical myelogram. Broussard testified that she did not pay for any of the physician visits or diagnostic testing and that the only unpaid bills are some for Dr. Marx. When asked, her physicians testified that at least some of the physiological injuries they found were because of degenerative diseases like arthritis or because of her age.

---

[1] Broussard saw: Dr. Kilgore, Dr. Foster, Dr. Leoni, Dr. Schutte, Dr. Marx, Dr. Anthony Ioppolo, Dr. Cobb and Dr. John Budden, although Dr. Ioppolo was for a second opinion, and Dr. Budden was for an IME.

## PROCEDURAL HISTORY

Broussard filed a disputed claim for compensation on January 8, 2007. In that claim, she alleged that she was injured during the afternoon of February 21, 2004 while lifting paint cans. She disputes the workers' compensation rate, claiming it should be "more," sought choice of physician, complained that Stine had stopped treatment by Dr. Marx, and sought penalties and attorney fees. Broussard also filed a motion and order to compel medical treatment on January 19, 2007.

On May 4, 2007, the parties convened for a hearing on Broussard's choice of physician, particularly her desire to see an orthopedist other than Dr. Schutte. Although she had signed choice of physician forms for Drs. Foster, Leoni, and Schutte, Broussard claimed she was never allowed to choose her physicians. However, at the hearing, Broussard testified that Dr. Foster had given her the names of several doctors, and her companion who was with her at the time, had heard of Dr. Schutte, and that was why she chose this particular doctor. She never made a request to change orthopedic doctors with either Stine or its insurance company before filing the motion and order to compel medical treatment.

The WCJ found that Broussard had chosen her physicians but ordered that she could choose a different orthopedic physician of her choice to treat her shoulder and to examine her lower back to determine whether that pain was caused by the February 24, 2004 incident. The WCJ also ordered that Broussard identify a pain management doctor, and that, once she did so, authorization would be approved.

On April 29, 2009, the remaining issues were tried. The WCJ found that Broussard's testimony "went beyond acceptable 'self-serving' to the point where her testimony at trial completely contradicted other statements she had made, either in her

5

deposition or her histories to the doctors." Despite that finding, the WCJ found that an accident occurred on February 21, 2004. The WCJ further found that Broussard presented a prima facie showing of an inability to earn ninety percent or more of her pre-injury wage before February 5, 2007, that the employer gave Broussard a sedentary job that allowed her to move about and paid ninety percent of her pre-injury wage, and that Broussard could perform the job but for her complaints of pain. The WCJ found that she did not prove by clear and convincing evidence that she was unable to perform the job due to substantial pain.

The WCJ terminated Broussard's indemnity benefits as of February 5, 2007, and found that she was entitled to indemnity benefits in the sum of $238.46 per week from November 15, 2004 until February 5, 2007. The WCJ found that no further medical treatment was needed for her shoulder or neck and that there was a mere preponderance of the evidence that she required palliative treatment for her low back. The WCJ granted Broussard permission to treat with Dr. Cobb for her low back complaints and ordered payment of Dr. Marx's bills in accordance with the fee schedule.

The WCJ ordered Stine to pay $8,000.00 in penalties for its failure to pay the correct compensation rate; its denial of physical therapy as recommended by Drs. Foster and Leoni; its failure to approve treatment of Dr. Marx; and multiple instances of it failing to pay mileage requests or paying the wrong amount. Stine was further ordered to pay attorney fees in the amount of $12,000.00; costs in the amount of $1,235.74; and interest as may be provided by law. In the judgment, Stine was ordered to be given credit against the payment of future indemnity benefits and for sums paid beyond February 5, 2007.

Broussard and Stine each appeal, assigning between them nine errors: 1) that the WCJ erred in finding that Broussard met her burden of proving that an accident occurred; 2) that the WCJ erred in finding that Broussard chose any of her physicians; 3) that the WCJ erred in limiting treatment by Dr. Cobb; 4) that the WCJ erred in terminating her benefits; 5) that the WCJ erred in finding that her testimony was unreliable and self serving; 6) that the WCJ erred in awarding past medical benefits for Dr. Marx; 7) that the WCJ erred in finding that Broussard is entitled to palliative treatment with Dr. Cobb; 8) that the WCJ erred in assessing penalties and attorney fees against Stine; and 9) that the WCJ erred in not awarding additional attorney fees and penalties for termination of Broussard's weekly compensation benefits.

For the following reasons, we find that Broussard did not meet her burden of proving that there was an accident on February 21, 2004, as defined by La.R.S. 23:1021(1). As a result, we need not address any other assignments of error.

## DISCUSSION

Although appellate courts "[t]heoretically . . . have the power and authority to redetermine, based on review of the record on appeal, every fact expressly or implicitly found by the trier of fact," "the [Louisiana] Supreme Court jurisprudentially established standards for appellate review of facts that preserve the traditional functions of the respective levels of the courts." Frank L. Maraist and Harry T. Lemmon, *Louisiana Civil Law Treatise*, *Vol. 1, Civil Procedure*, § 14:14, (2010).

In *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973), the supreme court defined the standard to be used in appellate review of facts as follows:

> When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis

7

for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

In the instant case, Broussard claims that a workplace accident occurred on February 21, 2004, entitling her to workers' compensation benefits. This court has previously noted that "[f]indings by the WCJ that an accident arose out of and was in the course and scope of employment are factual determinations subject to review under the manifest error standard." *Mayes v. Deep So. Chem., Inc.*, 11-91, p. 3 (La.App. 3 Cir. 6/1/11), 66 So.3d 65, 68. The manifest error standard also applies to other factual determinations made by the WCJ, including the assessment of penalties and attorney fees. *Rutledge v. Res. Transp.*, 08-1149 (La.App. 3 Cir. 3/4/09), 7 So.3d 794.

The WCJ found that Broussard had been involved in an accident on February 21, 2004, despite also finding that "[t]he 'accident' she complains of does not necessarily meet the plain language of 23:1021(1)." An accident, for workers' compensation purposes, is: "[a]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

The event or accident triggering workers' compensation coverage can be one of two things: either a sudden, unexpected, or violent occurrence that causes injury;

or it can be "an unexpected change in the employee's Physical Condition which renders him incapable of working, a change caused at least in part by an employment incident." *Quillin v. Calcasieu Marine Nat'l Bank*, 96-685, p. 5 (La.App. 3 Cir. 12/11/96), 690 So.2d 802, 804 (quoting *Sparks v. Tulane Med. Ctr. Hosp. & Clinic*, 546 So.2d 138, 143 (La. 1989)).

"To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and scope of his employment; the accident caused his injuries; and the injury caused his disability." *Ceasar v. Crispy Cajun Rest.*, 94-30, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, 473, *writ denied*, 94-2736 (La. 1/6/95), 648 So.2d 931 (citing *Kennedy v. Sec. Indus. Ins. Co.,* 623 So.2d 174 (La.App. 1 Cir.), *writ denied*, 629 So.2d 389 (La.1993)). Once a claimant has established those elements, he must then show, by clear and convincing evidence, that he is temporarily totally disabled. *Id*.

Broussard experienced back pain, numbness in her face, and other symptoms for years prior to the alleged accident on February 21, 2004. Although "[a] pre-existing disease . . . does not disqualify [a person] from receiving benefits if the workplace accident aggravated [or] accelerated . . . the disease to produce the disability for which compensation is claimed," it stands to reason that a claimant must prove that there was an accident and that the accident aggravated or accelerated the pre-existing condition causing disability. *Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755, *writ denied*, 95-3093 (La. 2/16/96), 667 So.2d 1058.

"The work-related accident has consistently been interpreted liberally by our courts." *Iberia Med. Ctr. v. Ward*, 09-2705, p. 13 (La. 11/30/10), 53 So.3d 421, 430-31. That being said, the liberal construction of the workers' compensation statute does not apply to proof that the accident occurred or that it caused the disability. *See Cooper v. Harris*, 315 So.2d 331 (La.App. 3 Cir. 1975).

The WCJ found that Broussard was unable to prove an accident under the statutory definition, yet still awarded Broussard benefits because "the evidence does preponderate in her favor under the applicable jurisprudence." We disagree for two reasons. First, Broussard's alleged accident was not unexpected or unforeseen, and second, there was no "event" that caused Broussard's alleged injuries.

Broussard testified that she knew that lifting paint cans would hurt her back; that she knew that she could call for help and someone would come to lift the cans for her; and that she lifted the paint cans anyway. Her back then began to hurt. It was neither unexpected nor unforseen that lifting paint cans would cause her back to hurt, and unexpected or unforseen events are statutorily required to find that an accident occurred for workers' compensation purposes.

Even if we disregard the argument that because the February 21, 2004 incident does not meet the statutory definition of an accident because it was neither unforeseen nor unexpected, Broussard still failed to prove by a preponderance of the evidence that she suffered a workplace accident. The WCJ found that Broussard "consistently testified that her pain on that day was not caused by [one] specific thing, rather by the repetitive lifting of the paint."

Although this court has sometimes held that repetitive workplace actions that ultimately cause an injury and subsequent disability qualify as "accidents" for

10

purposes of workers' compensation coverage, we decline to extend that line of reasoning in this case. *See Cox v. Port Aggregates, Inc.*, 10-707 (La.App. 3 Cir. 2/2/11), 54 So.3d 1257, *writ denied*, 11-462 (La. 5/6/11), 62 So.3d 128, and *Ricaud v. Holloway Sportswear, Inc.*, 98-1422 (La.App. 3 Cir. 5/26/99), 741 So.2d 124, *writs denied*, 99-1822, 99-1882 (La. 10/1/99), 748 So.2d 454, 455. In those cases, the claimant repeatedly performed certain activities as part of his or her job duties and suffered from those repetitive performances; in the instant case, the only repetitive action performed by Broussard was the lifting of one-gallon paint cans four or five times. We do not find, absent a sudden or unexpected event that meets the statutory definition of an accident, that lifting four or five paint cans in one day is the sort of "repetitive action" discussed by this court in other cases.

Additionally, in the cases where the repetitive behavior was declared an "accident," the claimant did not have a hidden prior history of medical complaints, and a correlation between his or her workplace duties and the sustained injury was obvious. Conversely, Broussard suffered from back and neck pain, facial numbness, and other complaints identical to those she alleged arose from the February 21, 2004 "accident" for over ten years. Broussard failed to provide complete medical histories to her doctors, which prohibited them from accurately determining the cause of her injuries. Additionally, there was not a consensus among her treating physicians, even without her past medical history, that lifting the paint cans caused the plethora of injuries she allegedly sustained. Several of the physicians involved testified that Broussard could do light lifting, and one stated that she could lift up to thirty pounds. A one-gallon can of paint does not weigh more than thirty pounds.

11

The evidence Broussard presented in support of the alleged accident, that is, her own inconsistent and unreliable testimony and the testimonies of physicians who were not privy to an accurate or complete medical history, failed to prove that her injuries were caused or exacerbated by the lifting of paint cans. We find that the WCJ was manifestly erroneous in determining that Broussard met her burden of proving an accident by a preponderance of the evidence. Accordingly, we reverse.

## DECREE

For the foregoing reasons, we conclude that the WCJ was manifestly erroneous in finding that Broussard met her burden of proof in establishing that an accident, as defined by La.R.S. 23:1021(1) occurred. Accordingly, we reverse the judgment in its entirety. Costs of this appeal are cast to Roberta Broussard.

**REVERSED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-168

ROBERTA BROUSSARD

VERSUS

STINE LUMBER COMPANY

**Cooks, J., dissenting.**

I must respectfully and vigorously dissent from the majority's holding. The majority finds that no accident occurred as defined under the workers' compensation statutes because "Broussard's alleged accident was not unexpected or unforeseen" and because there was "no 'event' that caused Broussard's alleged injuries." This reflects a fundamental misunderstanding of the Louisiana Workers' Compensation statutory scheme and is completely at odds with settled law and jurisprudence on the subject. The majority reasons that Broussard should have known that lifting the one gallon paint cans "would cause her back to hurt" and therefore the incident was not "unexpected or unforeseen." As far back as 1942, and in countless cases since then to the present, our courts have held as did the first circuit in *Murray v. Mengel Co.*, 9 So.2d 818 (La. App. 1 Cir. 1942):

> It is now well established in our jurisprudence that, if excessive heat, heavy **lifting** or straining, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition, the legal requirements are present to constitute an **accident**, and the injury is compensable. *Wright v. Louisiana Ice & Utilities Co.*, 10 La. App. 173, 138 So. 450*; Ozbolt v. Weber-King Mfg. Co. et al.*, La. App. 193 So. 383; *Nickelberry v. Ritchie Gro., Co. et al.*, 196 La. 1011, 200 So. 330.

In essence the majority denies plaintiff coverage under the workers' compensation act employing negligence standards, implying she was at fault and/or assumed the risk of injury when she lifted five one-gallon cans of paint, one at a time, serving a customer in the normal course and scope of her employment.

1

Negligence, fault and assumption of risk have no place in this employee's claims for on-the-job injuries. The Louisiana Supreme Court, in *Reeves v. Structural Preservation Systems*, 98-1795 (La. 3/12/99), 731 So.2d 208 stated (emphasis added):

> Since 1914, workers' compensation has traditionally been a quid quo pro remedy in that the employee is entitled to fixed benefits if his injury occurs during the course and scope of his employment, *regardless of the employer's lack of fault or the employee's own fault*, and in exchange, the employer is relieved of the prospect of large damage judgments.

Even negligence of a co-employee is excluded from consideration for application of workers' compensation for an employee's on-the-job injury. *See Craft v. Wal-Mart Stores, Inc.*, 01-564 (La. App. 3 Cir. 10/31/01), 799 So.2d 1211.

The majority further reasons that Broussard's accident was neither unforeseen nor unexpected because she "testified that she knew that lifting paint cans would hurt her back; that she knew that she could call for help and someone would come to lift the cans for her; and that she lifted the cans anyway." The majority acknowledges that immediately after lifting the cans Broussard's back began to hurt, i.e. she suffered an on-the-job injury while in the course and scope of her employment. But, says the majority, even if the incident meets the statutory definition of an accident, which it unquestionably does, Broussard is denied coverage because "We do not find, absent a sudden or unexpected event that meets the statutory definition of an accident, that lifting four or five paint cans in one day is the sort of 'repetitive action' discussed by this court in other cases." Indeed Broussard's lifting four or five one-gallon cans of paint successively to fill the customer's order is not the sort of "repetitive activity" discussed in the line of cases cited by the majority which award coverage to injured employees. This was clearly "[a]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, *with or without human fault*, and directly

2

producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1) (emphasis added). The WCJ found that a compensable injury occurred. As the majority acknowledges, his finding is entitled to great weight and cannot be disturbed absent manifest error. There is no manifest error in the WCJ's finding that Broussard suffered an on-the-job injury while lifting four or five one-gallon cans of paint in the course and scope of her employment. The majority engages in re-weighing the evidence presented and assessing the credibility of witnesses, acknowledging that one of the physicians who testified stated "she could lift up to thirty pounds" and then pointing out that "a one-gallon can of paint does not weigh more than thirty pounds." And yet, earlier in the opinion, the majority faults Broussard for picking up these one-gallon cans asserting "she knew that lifting paint cans would hurt her back."

This court held in *Verret v. State Farm Mut. Auto. Ins. Comp.*, 99-1250 (La.App. 3 Cir. 2/2/00), 759 So.2d 115, *writ denied* 2000-673 (La. 4/20/00), 760 So.2d 1159, and *writ denied* 2000-690 (La. 4/20/00), 761 So.2d 535 (emphasis added):

> As explained by the supreme court in *Reeves v. Structural Preservation Systems*, 98-1795 (La.3/12/99); 731 So.2d 208, workers' compensation is the exclusive remedy for an employee unless the injury complained of resulted from an intentional tort. *See* La.R.S. 23: 1032(B). The supreme court stated:
>
> > [T]he meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result."
> >
> > *Id*. at p. 6; 211 (quoting *Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981).
>
> In addressing the "substantially certain" concept, the supreme court explained that: "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise

to the level of an intentional act, *but instead falls within the range of negligent acts that are covered by workers' compensation*." *Id*. at p. 9; 212.

Under the jurisprudence of this state, Broussard's injury was clearly unforeseen and unexpected and even if her actions *could* be said to somehow be negligent, as the majority finds, any such negligence or assumption of risk does not preclude coverage under Louisiana's workers' compensation law. Broussard proved by a preponderance of evidence that her back began to hurt right after she lifted these cans of paint – a fact acknowledged by the majority. Suffice it to say, the law and jurisprudence support the WCJ's conclusion that an accident occurred. Whether her pain was a manifestation of a compensable injury –i.e. one producing disability, is also a factual issue in this case which the WCJ resolved in Broussard's favor. On appeal, our review is limited by the manifest error rule which the majority acknowledges but apparently ignores in the final paragraphs of this decision. It appears in the end the majority re-weighed the evidence, and substituted the decision of three members of the panel for that of the WCJ and two members of the panel, who thought otherwise. This result is exactly why the manifest error rule requires that we affirm the WCJ's factual findings. I believe the majority's holding begs for remand from the Louisiana State Supreme Court and my only choice at this stage is to dissent.