# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-927

**BYRLE RANEY**

**VERSUS**

**TOP DECK, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 17-03561
DIANNE MARIE MAYO, WORKERS COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Patrick A. Johnson**
**Allen & Gooch**
**Post Office Box 81129**
**Lafayette, Louisiana 70598-1129**
**(337) 291-1430**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Argonaut Insurance Company**
     **Top Deck, Inc.**

**Dustin B. Gibson**
**Attorney at Law**
**1538 West Pinhook, Suite 103**
**Lafayette, Louisiana 70503**
**(337) 501-2418**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Byrle Raney**

**SAVOIE, Judge.**

Defendants Top Deck, Inc. and Argonaut Insurance Company appeal the judgment of the trial court, finding in favor of Plaintiff Byrle Raney. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Byrle Raney filed a Disputed Claim for Compensation on June 12, 2017. He claimed that, on or about February 8, 2017, while he was working at the Packing Corporation of America facility in DeRidder, Louisiana, he was injured as a result of a major explosion on the job site. Raney alleged that he was pushed form a seated position into iron scaffolding, injuring his right shoulder. Following a subsequent explosion, he fell backwards into the grating and onto the floor, sustaining further injuries. Raney requested unpaid wages, reimbursement for medical treatment, and claimed Top Deck, Inc.'s actions were arbitrary and capricious. Defendants filed an Answer wherein it was admitted that Raney was their employee on the date of the accident, however, it was denied that Raney was in the course and scope of his employment.

After a trial on the merits, the trial court found that Raney satisfied his burden of proof that a workplace accident occurred and found that his injuries were causally related to said accident. The trial court awarded $618.36 per week to Raney, including back-pay of $45,140.28 from February 8, 2017, through trial. The trial court further found that Defendants failed to reasonably controvert Raney's claim and ordered them to pay $2,000 for failure to pay indemnity benefits, $2,000 for failure to pay medical benefits, and assessed Defendants with $12,000 in attorney's fees for the arbitrary and capricious denial of Raney's workers' compensation benefits. Defendants now appeal.

## ASSIGNMENTS OF ERROR

1. The Trial Court committed manifest error in denying [D]efendants' defense of fraud under LSA-R.S. 23:1208 based upon RANEY'S intentional misrepresentation of his medical history and substance abuse in an effort to obtain disability determinations and medical benefits to which he was not entitled.

2. The Trial Court committed manifest error in ruling that [RANEY] has satisfied his burden of proof as to the occurrence of the accident.

3. The Trial Court committed legal and manifest error in ruling RANEY'S medical complaints were causally related to his alleged accident over the concerns of the various physicians.

4. The Trial Court committed manifest error in awarding RANEY indemnity benefits, when the evidence does not support that he suffered an accident or any injury.

5. The Trial Court committed manifest error in assessing penalties and attorneys' fees against the [D]efendants.

## LAW AND DISCUSSION

### I.    *Standard of Review*

This court in *Numa C. Hero & Son v. Leleux*, 15-305, p. 3 (La.App. 3 Cir. 10/28/15), 178 So.3d 595, 598, explained:

> Factual findings of the [Workers' Compensation Judge] are subject to manifest error review. *Buxton v. Iowa Police Dep't,* 09–520 (La.10/20/09), 23 So.3d 275. Whether the burden of proof has been satisfied and whether testimony is credible are questions of fact to be determined by the WCJ. *Id.* Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. *Id.*

### II.    *Assignment of Error Number One*

Defendants first argue that the trial court committed manifest error by denying their defense of fraud under La.R.S. 23:1208, which states, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of

2

this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E.   Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Weaver v. Chicago Bridge & Iron*, 18-719, pp. 6-7 (La.App. 3 Cir. 9/18/19), ___So.3d___, ___, this court stated:

The court in *KLLM, Inc. v. Reed*, 00-295, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 731 (citations omitted) explains:

The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Section 1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture.

"Because forfeiture of workers' compensation benefits is a harsh remedy, Section 1208 must be strictly construed." *Turner v. Chicago Bridge & Iron Co.*, 52,167, p. 7 (La.App. 2 Cir. 6/27/18), 251 So.3d 615, 622 (citing *Green v. Allied Bldg. Stores, Inc.*, 50, 117 (La. App. 2 Cir. 1/22/16), 185 So.3d 164, *writ denied*, 2016-0508 (La. 5/27/16), 192 So.3d 737). "False statements that are inadvertent or inconsequential will not result in forfeiture." *KLLM, Inc.*, 771 So.2d at 731. "Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error." *Id.*

Defendants assert that Raney intentionally misrepresented his substance abuse and medical history to obtain disability payments and medical benefits.

Regarding Raney's substance abuse, Defendants admit that the use of illegal substances does not itself defeat a claimant's compensation claim. However, Defendants contend it is fraud because Raney lied to his physicians about his use of illegal substances. Raney signed a document entitled "Opioid Policies" given to

him at Dr. George Williams' office on March 23, 2017. The document states, "I will not request or accept controlled substance medication from any other physician or individual while I am receiving medication from Dr. George R. Williams." It then states that use of these substances could result in a termination of the doctor/patient relationship. On May 2, 2017, Raney was seen at Oakdale Community Hospital for complaints of chest pains. A Uniform Drug Screen was performed which showed the presence of "cocaine" and "marijuana." He was prescribed the narcotic medication Norco. Raney also answered "No" to certain questions about whether he used recreational drugs and if he had a history of drug or alcohol abuse when asked at a visit to Dr. Steven Wyble, his pain management doctor.

It is Defendants' contention that these misrepresentations constitute fraud under La.R.S. 23:1208. In order for Raney's actions to rise to the level of fraud, the misrepresentations must be done "for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law." *Weaver*, ___ So.3d at ___. The Defendants have not proven this prong of the test. The record shows that Dr. Williams *may* have decided not to treat Raney had he known that he was using illegal substances. Further, the statements were inconsequential as they had nothing to do with the injury sustained during the accident nor any pre-existing injury. Fraud under La.R.S. 23:1208 is to be strictly construed. *Id*. The trial court found that Raney did not commit fraud. Based on the record, we cannot find that the trial court was manifestly erroneous in finding that Raney did not commit fraud pursuant to La.R.S. 23:1208.

Next, Defendants contend that Raney lied to his doctors about his lengthy medical history. Raney was examined by his treating physician, Dr. Williams, on

4

May 23, 2017. Dr. Williams noted that Raney presented with "complaints of pain in the lumbar region constantly." Under the heading "Surgical History," Dr. Williams states that "Patient has history of Arthroscopy Right Shoulder, Carpal Tunnel Right Wrist, and Arthroscopy Left Shoulder." On a questionnaire provided by Dr. Williams, a question was asked about whether Raney had ever had an MRI performed, to which he answered "Yes" and explained that his MRI was performed at the Louisiana Bone and Joint Clinic.

On this issue, the trial court found:

> I don't know how many patients give their doctor a detailed history of a past problem as Mr. Johnson would have you believe that were seven or eight years ago for a prior injury that occurred in 2010, but I do know that Mr. Raney did inform Dr. Williams of his arthroscopic right shoulder carpal tunnel; and in the questionnaire in Dr. Williams' record, they asked him if he had previous MRIs. He advised that he did have a previous MRI and it was with Lafayette Bone & Joint Clinic. Had Dr. Williams done his due diligence and sent for the medical information, it would have revealed everything that he needed to help him better serve this claimant. This was not hidden from Dr. Williams at [any] time. Dr. Williams did not ask for any past physicians. He did not have any – in his questionnaires did not ask for any past recommended surgeries. He listed the surgeries that he did have; and I just don't see it, the fraud as it relates to him hiding his past history.

After a review of the evidence, we cannot say that Raney made a willfully false statement for the purpose of obtaining benefits. The trial court did not make a finding of fraud, and we do not find that her decision was manifestly erroneous. This assignment lacks merit.

### III.    *Assignment of Error Number Two*

Defendants contend that the trial court committed manifest error in finding that Raney met his burden of proof that the accident occurred. "To establish that a claimant is entitled to workers' compensation benefits, claimant must prove by a preponderance of the evidence that an accident occurred during the course and

scope of his employment; the accident caused his injuries; and the injury caused his disability." *Broussard v. Stine Lumber Co.*, 11-168, p. 9 (La.App. 3 Cir. 1/25/12), 82 So.3d 1274, 1279, *writ denied*, 12-451 (La. 4/13/02), 85 so.3d 1250 (quoting *Ceasar v. Crispy Cajun Rest.,* 94-30, p. 3 (La.App. 3 Cir. 10/5/94), 643 So.2d 471, 473, *writ denied,* 94-2736 (La.1/6/95), 648 So.2d 931).

Louisiana Revised Statutes 23:1021(1) defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." "A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357, 361 (La.1992).

Defendants argue that Raney's accident was unwitnessed. While they agree that his testimony alone may be sufficient, Defendants contend that Raney's "story regarding the accident is factually inconsistent and directly contradicted by the owner of [Top Deck]." Raney stated that he was on the eighth floor of the building when the explosion occurred, however, Dennis Lee Malone, the owner of Top Deck, testified that Raney's description of the area he was in at the time of the accident could only be the third floor. The third floor is completely enclosed, and an explosion would not have affected anyone on that floor, according to Mr. Malone.

Raney contends that his version of the accident is strongly corroborated by the notice of the accident to the employer immediately after the explosion and, also,

by the employer's written report of injury to Raney's back. In addition, Raney sought medical treatment within the hours after the accident.

On this issue, the trial court found:

[T]he employer and the safety manager can't decide if [Raney] was on [the] third or the eighth floor. The employer and the owner said that what [Raney] described was on the third floor. The safety manager said, "[T]he space he described, it appears like it was on the eighth floor." So, I have to say that based on that, he was on the eighth floor because only he said that it – where he described it was, it looked like it was the third floor, although she said he was assigned to the third floor; but they said it was not uncommon that somebody would change a person's position where he was but they wouldn't do it in the middle of a shift. He said when he reported to work at six o'clock, that's when he was approached by an individual named Boog to work up on the eighth floor; therefore, it was not in the middle of a shift where they change where they wanted him to work at.

Secondly, I find that [Raney] did prove that there was an accident. He reported that he had jarred his back to Ms. Brumley on the day of the accident. It does not matter that he did not receive treatment on the site. He received treatment the same day at Oakdale clinic, the same night when he got home.

Based on the evidence in the record, we cannot say that the trial court was manifestly erroneous in finding that an accident occurred. This assignment of error is without merit.

*IV.    Assignments of Error Numbers Three and Four*

In the next two assignments of error, Defendants argue that the trial court erred in finding that Raney's injuries were causally related to the accident and, therefore, he should not have been awarded indemnity benefits.

The court in *LaSalle v. City of Lake Charles*, 17-32, pp. 3-4 (La.App. 3 Cir. 5/24/17), 222 So.3d 148, 151-52 (alterations in original)(quoting *Bollich v. Family Dollar Inc.*, 05-1459, p. 5 (La.App. 3 Cir. 6/21/06), 934 So.2d 249, 252), explained:

In a workers' compensation case, the claimant must establish a causal link between the work-related accident and the claimed

disability. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). To aid the employee in meeting this burden:

> [t]he employee's workplace accident is presumed to have caused or aggravated his disability when [he] proves that: (1) before the accident, [he] had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a [causal] relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.

*Tate v. Cabot Corp.*, 01-1652, p. 6 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044 (quoting *Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755, *writ denied*, 95-3093 (La. 2/16/96), 667 So.2d 1058 (citations omitted)).

In a report dated January 16, 2018, Dr. Williams explained that "Raney's diagnoses are lumber back pain, lumbosacral radiculopathy, and lumbosacral degenerative disc disease with annular tear/HNP." He was treated with physical therapy and medications. Dr. Williams went on to state that "[w]e are of the opinion that it is more probable than [not] that the accident on February 8, 2017, produced the diagnoses, the care, the treatment, the MRI, the physical therapy, the medications, and the subsequent treatments that we are currently treating [Raney] with secondary to the accident on February 8, 2017." Dr. Williams explained that Raney was "currently on a no-work restriction."

In its oral reasons, the trial court determined:

Dr. Williams found out after an MRI was done at Opelousas General Hospital on 4-2017 that there was an anular tear and there was a mild disc bulge to the L4-S1, I believe it was. And in 2011, although he was suffering from pre-existing conditions from the 2011 MRI, it did not show an anular tear. And Dr. Budden, when he reviewed the medical records – he did not have the film in front of him to review to

8

say whether or not there was an anular tear there or not, but he did note that there was an anular tear there on the 2017 film.

Furthermore, Dr. Williams stated that the anular tear could be caused by trauma or degeneration. After reviewing the films, he said he couldn't make a determination whether it was trauma or degeneration. If he can't make that determination, I can't make that determination. But the MRI shows it's there in 2017 and it was not there in 2011. Therefore, he has proved that his accident caused a new injury, not to the old injury at the L4-L5, L4 to 5.

Moreover, I find that the accident aggravated the pre-existing condition he has. Workers' Comp 101 always said that you take an employee as you find him. Even if he did not aggravate his previous condition, he had new injuries and this claim should have been paid.

Based on the foregoing, we cannot find the trial court's ruling that Raney's injuries are causally related to the accident was manifestly erroneous.

We have determined that an accident occurred and that Raney's injuries were causally related to the accident, we now turn to Defendants' argument that Raney is not entitled to indemnity benefits. The trial court determined that Raney "was unable to return to work, due to his injuries from the work accident on February 8, 2017, and is entitled to indemnity payments of temporary total disability in the amount of $618.36 per week in accordance with the Louisiana Worker's Compensation Act." The trial court awarded back due benefits from February 8, 2017, through July 27, 2018, in the amount of $45,140.28.

Louisiana Revised Statutes 23:1221 provides:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

**(1) Temporary total.**

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience,

9

sixty-six and two-thirds percent of wages during the period of such disability.

(b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.

(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.

"[T]he question of whether or not a worker is temporarily totally disabled is a question of fact best left to the factfinder." *Menard v. Winn Dixie La., Inc.*, 93-1497, p. 9 (La.App. 3 Cir. 6/1/94), 640 So.2d 775, 781. "[C]ompensation for temporary total disability benefits shall be awarded only if an employee not engaged in employment proves by clear and convincing evidence that he is physically unable to engage in any employment or self-employment." *Id.*

Raney was examined by Dr. Williams on March 23, 2017. In a report from that examination, Dr. Williams explains that Raney's "pain radiates from the lumbar to the right lower leg and left lower leg." Regarding his physical ability, Dr. Williams notes, "The patient's symptoms are aggravated by standing and

bending. He walks with a cane. The patient is unable to walk about 10 minutes."

On May 23, 2017, Raney received a "Return to Work Certificate" from Dr.

Williams which instructed Raney "may not return to work." In Dr. Williams'

January 16, 2018 report, he states that Raney "is currently on a no-work restriction."

Based on the record, we cannot find that the trial court was manifestly

erroneous in finding that Raney was entitled to indemnity benefits. This

assignment of error is without merit.

VI.     *Assignment of Error Number Five*

Finally, Defendants argue that the trial court erred in assessing them with

penalties and attorney's fees. Louisiana Revised Statutes 23:1201(F)(2) states:

> Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

"A claim is reasonably controverted when the employer or insurer produces

factual or medical information that reasonably counters the claimant's evidence."

11

*Bourgeois v. Brown's Deli & Mkt., Inc.,* 09-290, p. 7 (La.App. 3 Cir. 10/14/09), 21 So.3d 1072, 1077. "The decision to cast an employer with penalties and attorney fees is a question of fact subject to the manifest error standard of review." *Brown v. Lafayette Ass'n of Retarded Citizens, Inc.,* 11–1595, p. 12 (La.App. 3 Cir. 6/20/12), 94 So.3d 950, 959. A WCJ's decision on whether to award penalties and attorney fees is subject to great discretion which will not be disturbed absent an abuse of discretion. *Briscoe v. McNeese State Univ.,* 11–872 (La.App. 3 Cir. 12/7/11), 80 So.3d 700.

The trial court in this matter awarded Raney: (1) $2,000.00 for Defendants' failure to pay indemnity benefits; (2) $2,000.00 for Defendants' failure to pay medical expenses or authorize treatment; and (3) $12,000 in attorney's fees. After a review of the record, we find no manifest error in either the award of or amount of penalties and attorney's fees ordered by the trial court.

<u>CONCLUSION</u>

The judgment of the trial court is affirmed. The costs of this appeal are assessed to Defendants Top Deck, Inc. and Argonaut Insurance Company.

**AFFIRMED.**